[No. 6016.  Decided March 29, 1906.]

JOSEPH N. MORRIS, *Appellant,* v. MAYNARD WARWICK,
*Respondent.*[1]

TRIAL—VERDICT—TAKING CASE FROM JURY.  The trial judge has
no power to discharge the jury and render judgment for the de-
fendant because he thought a new trial would be necessary if any
other verdict was rendered, unless there is no sufficient legal testi-
mony to sustain a verdict for the plaintiff.

HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—DEFENSES—PRIOR
SEPARATION.  A separation of a husband and wife, prior to any acts
by the defendant cannot be set up as a bar to an action for aliena-
tion of the affections of the wife, on the theory that no affection
existed; the right to a reconciliation being one that a stranger cannot
interfere with.

Appeal from a judgment of the superior court for Lincoln
county, Warren, J., entered November 17, 1905, in favor of
the defendant, upon withdrawing the cause from the consid-
eration of the jury, after a trial on the merits, in an action
for alienating the affections of a wife.  Reversed.

*H. N. Martin, J. T. Mulligan,* and *N. T. Caton,* for ap-
pellant.

*Merritt & Merritt,* for respondent.

DUNBAR, J.—This is an action brought by the appellant
against the respondent, for damages for alienating the af-
fections of his wife.  At the close of plaintiff's testimony,
defendant's motion for a nonsuit was denied, and at the close
of the case the defendant challenged the legal sufficiency of
the testimony, and also moved the court for an instructed
verdict.  The court was of the opinion that the proper pro-
cedure would be to discharge the jury and enter judgment,
which it proceeded to do, entering judgment in favor of the
defendant.

In speaking of the case of *Clark v. Great Northern R. Co.,*

1Reported in 85 Pac. 42.

37 Wash. 537, 79 Pac. 1108, the court intimated that it was
its duty to discharge the jury in this case, and decide the
case on the weight of the testimony, making the following
statement: "I wish you would read that *Clark* case all
through. I do not know as I exactly understand it yet my-
self. If it means what it says, as I understand it, the jury
would be simply an ornament." The court then proceed-
ing, said:

"In this case the duty devolves upon the court under the
law laid down, to take the case from the jury and render a
verdict in accordance with the court's opinion, and in view
of the fact that the court in this case has listened to the
testimony, and is satisfied that a verdict in this case must
be in favor of defendant, that the plaintiff has failed entirely
to make out a case, and that the facts in this case, as applied
to the law, would compel a verdict of that kind, and in view
of the fact that you, gentlemen, not understanding the law,
probably might bring in a verdict some other way, which I
would be compelled to set aside, I think the proper thing to
do would be to discharge the jury and render a verdict my-
self. So you are excused from any further duty in this case,
and judgment will go for the defendant in this case."

The court evidently misinterpreted the *Clark* case, for it
was not the intention of this court in that case to subjugate
the discretion of the jury in passing upon questions of fact to
the will of the court, or to go beyond the provisions of the
statute. In that case it appeared from statements made by
the court that he thought a new trial ought to be granted for
insufficiency of the evidence, but that the court did not have
the legal authority to grant such new trial; and it was held
by this court that the court erred in its construction of the
law, for the statute, Bal. Code, § 5071, subd. 7, especially
makes insufficiency of the evidence to justify the verdict a
ground for granting a new trial. But it will be observed
that it does not authorize the court to take the case from the
jury and make a final determination of the issues itself; but

that, acting on the supposition that substantial justice has not been done by reason of some mistake or inadvertence of the jury, simply gives the parties another trial. As to how often the court would be justified in granting a new trial on the same testimony in the same case, is a question to be determined by the appellate court in passing upon the proper exercise of such discretion on the part of the trial court. Under the theory of the law, however, the ultimate decision upon the question of fact involved is the province of the jury. Bal. Code, § 4994, provides that,

"In all cases tried in the superior court with a jury in which the legal sufficiency of the evidence shall be challenged, and the court shall decide as a matter of law what verdict should be found, the court shall thereupon discharge the jury from further consideration of the case, and direct judgment to be entered in accordance with its decision."

This section, it will be observed, deals alone with the legal sufficiency of the evidence, not taking into account at all its probative sufficiency. That is to say, if the evidence offered, if admitted to be true, is not legally sufficient to sustain a verdict, there is nothing for the jury to pass upon, and it becomes the duty of the court to discharge the jury and render the judgment which the law prescribes. So that it will be seen that there was no justification, under the law, for the action of the court in discharging the jury and rendering judgment for the defendant in this case, unless it appears that there was not sufficient legal testimony offered by the plaintiff to sustain a judgment. In fact, it is candidly stated by the attorney for respondent in his brief that, if it could be maintained that there was evidence legally sufficient to support a verdict, then it cannot be doubted that the jury should have passed upon the facts.

But it is contended that there was not sufficient evidence in the case. With this conclusion of learned counsel we cannot agree. It seemed to be the view of the trial court that the conduct of the defendant and the plaintiff's wife, at any

time after the separation of plaintiff and his wife, was not pertinent nor material, on the theory, as indicated by the court, that there could be no alienation of affection where none existed. But it does not necessarily follow that affection does not survive a separation. No arbitrary standard of action can be erected by which conjugal affection can be tested or measured. It differs in intensity and constancy with the different temperaments and characters of the individuals. It may be so superficial that slight provocation would be sufficient to destroy it, or it may be so deeply rooted that it will survive neglect, disgrace, brutal treatment, and desertion. It sometimes even outlives legal separation, as is proven by many authenticated instances of men and women remarrying after divorce has been obtained. Husbands and wives, in the heat of passion engendered by wrongs, real or imaginary, may, and frequently do, separate from each other, and yet when time gives opportunity for reflection and self-examination, it is frequently discovered by both parties that the actual cause of dissension was really trifling, that affection was not annihilated, but simply for the time being forced into the background, and reconciliation is devoutly desired by both. And it is this right to a reconciliation that a stranger has no right to interfere with, or deprive a husband or wife of. They are legally husband and wife until they are divorced, and legal responsibility still attaches to the husband to support the wife. It is well-established law in this country that evidence offered by the defendant to show a state of facts indicating that no affection existed between the plaintiff and his wife will not be heard as a bar to action for alienation of affection, but will simply be heard in mitigation of damages. Some of the authorities go so far as to hold that, where it was admitted that the wife had no affection for the plaintiff, a third party had no right to interfere or cut off any chance of an affection springing up in the future; and that it is not in the interest of good order and public morals to permit one who has no right to interfere to set up a disagreement, or

even separation, as a complete defense to an action by the latter for the wrong. Elliott, Evidence, § 1650; 15 Am. & Eng. Ency. Law (2d ed.), p. 862; Sutherland, Damages (3d ed.), p. 3771; Cooley, Torts (2d ed.), p. 263; and cases cited by the above authorities, which fully sustain the text. Without specifically analyzing the testimony, it is sufficient to say that there is ample evidence, if the jury believed it, to sustain a judgment against the defendant.

The judgment of the court will therefore be reversed, and a new trial had.

MOUNT, C. J., ROOT, CROW, FULLERTON, and HADLEY, JJ., concur.