[No. 13999. Department Two. October 16, 1917.]

ESTHER ALDEEN LYEN, *Respondent*, v. JAMES L. LYEN
*et al., Appellants.*[1]

HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—DAMAGES—EXCESSIVENESS. A verdict for $15,000 against parents of a husband for alienation of the husband's affections is not excessive where the defendants spirited him away immediately after the marriage, a strong bond of affection having theretofore existed, and the facts warranted an inference that the defendants were prompted by malicious motives.

APPEAL—REVIEW—HARMLESS ERROR. Error cannot be predicated upon the suppression of a deposition, taken at the instance of a party who was no longer a party to the action or interested in the outcome.

WITNESSES — COMPETENCY — HUSBAND AND WIFE. Rem. Code, § 1214, providing that a husband shall not be examined for or against his wife without her consent, applies to an action for alienation of affections.

APPEAL—REVIEW—HARMLESS ERROR. Error in the suppression of a deposition of a husband in an action by a wife against his parents for alienation of affections is not available to the defendants, where the deposition was taken only because of the husband's absence from the state, and, under Rem. Code, § 1214, he could not testify against the wife without her consent.

[1]Reported in 167 Pac. 1113.

·Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered June 7, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action for alienation of affections. Affirmed.

*Cooley, Horan & Mulvihill,* for appellants.

*Fred C. Brown* and *John B. Hart* (*Howard Hathaway* and *Eugene Beebe,* of counsel), for respondent.

PARKER, J.—The plaintiff, Esther Aldeen Lyen, seeks recovery of damages which she claims as the result of the alienation of the affections of her husband, Cecil Lewis Lyen, by the defendants, James L. and Ida M. Lyen, the father and mother of her husband. Trial was had in the superior court for Snohomish county, resulting in verdict and judgment awarding plaintiff $15,000 damages as against the defendants, from which they have appealed to this court.

It is first contended in appellants' behalf that the evidence introduced at the trial was insufficient to support any judgment against them or either of them. A painstaking review of the evidence has convinced us that this contention cannot be sustained. We feel that it would be unprofitable to analyze in detail here the evidence relating to this distressing family affair. We have not overlooked the rule that it takes clear and convincing proof in cases of this nature to overcome the presumption that parents are prompted by proper motives in advising their children after marriage, as noticed in the decisions of this court in *Stanley v. Stanley,* 27 Wash. 570, 68 Pac. 187. We are convinced that there has been such proof produced in this case as fully warranted the jury in awarding damages to respondent as against appellants.

It is contended in appellants' behalf that, in any event, the verdict is so excessive as to evidence prejudice and passion on the part of the jury. In *Speck v. Gray,* 14 Wash. 589, 593, 45 Pac. 143, Judge Dunbar, speaking for the court in

sustaining a verdict awarding $15,000 damages for the alienation of a wife's affections, said:

"From the very nature of this kind of a case, if the injury is to be compensated in money at all, it must be seen that there is no basis upon which an appellate court can determine reasonably whether the jury acted under the control of passion or prejudice, and if they could in any case it is not discernible in this case. The testimony shows that respondent and his wife were respectable people; that she was entrusted with the care and education of the children in that community and received good wages as a school teacher. The respondent was a lawyer and at least commanded the respect of the people of the county in which he lived sufficiently to be elected to the office of prosecuting attorney. The testimony shows, and is not disputed, that the relations existing between the husband and wife prior to the advent of the appellant were not only cordial and friendly but very affectionate. Outside of the amount of money which would necessarily be involved in the breaking up of a home, there are questions which are so largely and purely sentimental, submitted too peculiarly to the discretion of the jury which tries the case, that, unless the amount found as damages should be clearly shown to be the result of passion and prejudice the court would not be warranted in reversing the case on the ground of excessive damages."

The facts there involved, it is true, presented a case of flagrant wrong on the part of the defendant, involving seduction of the wife as well as the alienation of her affections, which would necessarily intensify the feeling of humiliation and disgrace on the part of the wronged husband. These sentimental considerations were, however, apparently about all there was to look to in that case for the measurement of damages. While the case before us presents a wrong of somewhat different nature, we think there is little ground for arguing that it was any less distressing to respondent than to the plaintiff in that case. Respondent and her husband met in the spring of 1914. There then began a courtship, resulting in a strong bond of affection between them. They became engaged to be married. During the engagement,

they indulged in sexual intercourse, which resulted in the respondent becoming pregnant. Their engagement had been kept secret from their parents, but the pregnant condition of respondent induced them to disclose their engagement to their respective parents and the asking of the consent of the parents of both to their marriage, they both being under age, making such consent necessary before a license could be lawfully procured for their marriage. The parents of respondent not only consented, but urged the marriage. Appellants reluctantly consented to the marriage. Thereupon the marriage occurred in June, 1915.

Up to that time, and, in any event, for a short time following the marriage, the bond of affection between these young people was evidently as strong and secure as could be desired. Immediately after the marriage, appellants spirited their son, respondent's husband, away and she never saw him again. She begged them to have him return to her, or allow him to return to her, which they refused to do, refusing to tell her where he was. The evidence seems to render it plain that she married the son in the best of faith, believing that he was going to live with her; while the evidence seems to be equally convincing that appellants had formed the intention, before the marriage, to cause their son to leave respondent immediately following the marriage. There is evidence indicating that he knew of this intention on the part of his parents, but the jury were fully warranted in believing that he loved respondent and wanted to remain with her. Both the families of respondent and appellants are of apparent equal respectability. There may be some difference between them measured by conventional social standards, but even this seems to be little else than a difference in the possession of worldly goods. Sometime following the marriage, a child was born to respondent, the result of the association of her and her husband before the marriage. Notwithstanding the indiscretion of these young people prior to their marriage, the evident affection they had for each other, up to and im-

mediately following the marriage, promised a happy union between them, had they been permitted to live together. We think the evidence fully warranted the jury in taking substantially this view of the facts, and in concluding that the interference by appellants in this marriage relation was prompted by malicious motives. It is true that respondent's husband, by reason of his youth, had but little earning capacity, and as to respondent's loss of support, it might well be said that it was not very great, measured in dollars and cents, but her loss in other respects, we think it can well be argued in the light of all the facts and circumstances here shown, was fully as great as the plaintiff's loss involved in *Speck v. Gray, supra.* In our decision in *Phillips v. Thomas,* 70 Wash. 533, 127 Pac. 97, Ann. Cas. 1914B 800, 42 L. R. A. (N. S.) 582, the reluctance of the courts to interfere with verdicts in this class of cases by reason of their being excessive was recognized, though in that case a new trial was granted because of an excessive judgment, it being for $25,-000. It there appeared that the husband and wife were past middle life, had lived apart for some years previously and had but little affection for one another. We do not see our way clear to interfere with the verdict upon the ground of its being excessive, there being nothing in the record before us pointing to prejudice and passion on the part of the jury, except as might be inferred from the size of the verdict.

Cecil Lewis Lyen was made a defendant in this action with his parents, upon what theory, is of no consequence here. At the conclusion of the trial, the court instructed the jury that no recovery of damages could be had by respondent as against him, and a judgment was thereupon entered dismissing the case as to him. Sometime before the trial, the deposition of Cecil Lewis Lyen was taken in his own behalf at Denver, Colorado, where he had been residing since the marriage. We say "in his own behalf" because the commission for the taking of the deposition was issued at the request of counsel who appeared and answered separately for him, and

the commission therefor and the certificate of the commissioner taking the deposition so recites. During the trial and before the dismissal of the case as to Cecil Lewis Lyen, a motion was made in respondent's behalf to suppress the deposition upon a number of stated grounds, none of which, however, was that he was the husband of respondent and had testified against her without her consent, that ground of objection not being urged, evidently because he was then a defendant in the action.

The motion for the suppression of the deposition was by the court sustained upon some of the stated grounds upon which it was made. This ruling of the court is now urged as error prejudicial to the rights of appellants. Whatever technical error there may have been in the suppression of the deposition as against Cecil Lewis Lyen, or even as against the appellants upon the former trial, we are quite unable to see how such error could work to the prejudice of appellants, now that he is no longer a party to the action and has no interest in the outcome of a new trial should one be granted. It seems plain to us that he could not testify against respondent upon a new trial without her consent, and that, therefore, his deposition, being wholly testimony against her, could not be read in evidence upon a new trial without her consent. To now reverse this judgment for such error would be to no purpose whatever. We must proceed upon the assumption that she would not consent to the reading of the deposition upon a new trial, in view of the fact that practically its every word is against her. Section 1214, Remington's Code, reads:

"A husband shall not be examined for or against his wife without the consent of the wife, nor a wife for or against her husband without the consent of the husband; nor shall either, during marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during marriage. But this exception shall not apply to a civil action or proceeding by one against the other."

That this applies to an action by one spouse for the alienation of the affections of the other is well settled law. *Speck*

*v. Gray*, and *Stanley v. Stanley, supra;* 13 R. C. L. 1480. It
is argued that the competency of Cecil Lewis Lyen to testify
upon a new trial should be determined as of the time his
deposition was taken. Conditions may arise under which
such a rule would be applicable, but, plainly, we think such
rule has no application here. It is manifest that the depo-
sition of Cecil Lewis Lyen was taken only because of his ab-
sence from the state. Now, supposing he should be present
upon a new trial. Manifestly his deposition could not be
read in evidence by the express provisions of Rem. Code,
§ 1245, for the reason that its taking and use would then
no longer exist. See, also, 8 R. C. L. 1136. We would then
have the remarkable situation of a witness being present in
court not privileged to testify except by his wife's consent,
and yet his deposition read in evidence regardless of her con-
sent, if the contention of counsel for appellants be well found-
ed. Manifestly this is not the law applicable to such a situa-
tion. The text and authorities cited thereunder in 13 Cyc.
995 are of interest in this connection and may be said to lend
some support to our conclusion, though we do not cite them
as being exactly in point. We are of the opinion that the al-
leged error in the suppression of the deposition is unavail-
ing to appellants.

Some contentions are made as to certain other claimed er-
rors touching the admission and exclusion of testimony, and
the giving and refusal to give instructions to the jury.
These claims of error, we think, are so wholly without merit
as to not call for discussion here.

The judgment is affirmed.

Ellis, C. J., Holcomb, Mount, and Fullerton, JJ.,
concur.