## BUCKLEY v. FRANCIS.

No. 5034. Decided December 26, 1931. (6 P. [2d] 188.)

*B. C. Call*, of Brigham, and *Le Roy B. Young*, of Ogden, for appellant.

*L. Tom Perry* and *Geo. C. Heinrich*, both of Logan, for respondent.

ELIAS HANSEN, J.

This action is founded upon a complaint wherein plaintiff alleged that his wife's affections for him were wrongfully and unlawfully alienated by defendant to plaintiff's damage in the sum of $10,000, for which amount plaintiff prayed judgment against the defendant. The defendant by his answer denied generally the allegations of the complaint. Upon issues joined, a trial was had before the court sitting with a jury. The jury returned a verdict against the defendant in favor of the plaintiff in the sum of $4,000. Judgment was entered upon the verdict. The defendant appeals. He relies upon twenty-three assignments of error for a reversal of the judgment. Some of the assignments are without merit, are not argued, and hence are deemed waived and need not be discussed in this opinion.

Plaintiff and his wife, Ada Buckley, were married on January 20, 1893. There were eleven children born as the issue of the marriage. On July 11, 1927, Ada Buckley obtained a divorce from plaintiff, upon the ground that he had failed to provide her with the common necessaries of life. The decree of divorce became final on January 11, 1928. The defendant and his wife and the plaintiff and his wife were, for many years prior to the institution of this action, intimate friends, and frequently visited and associated with each other. Evidence was offered and received in support of the allegations of plaintiff's complaint which

tended to show that defendant was frequently seen in company with plaintiff's wife prior to the time the decree of divorce was granted; that on a number of occasions the defendant was seen to embrace and kiss plaintiff's wife; that defendant frequently called at the home of the plaintiff while plaintiff was away from home; that defendant and plaintiff's wife were, on numerous occasions, seen, unaccompanied by any one else, out riding in defendant's automobile; and that the attentions which defendant bestowed upon plaintiff's wife continued after the decree of divorce was granted. The contention is made on behalf of the defendant that the trial court was in error in admitting testimony relating to the attentions which the defendant bestowed upon Ada Buckley after she secured her divorce from plaintiff.

It has been held in an action by a divorced husband for the alienation of his wife's affections that evidence which tends to show the relations of the defendant and plaintiff's former wife after a divorce is inadmissible in the absence of evidence as to their relations before the separation. *Stewart* v. *Hagerty*, 251 Pa. 603, 96 A. 1099, Ann. Cas. 1917D, 483. When, however, as in the instant case, there is evidence which tends to show that the defendant began bestowing his affections upon plaintiff's spouse during the period of the marriage, then and in such case evidence of the relations of the defendant and plaintiff's former wife after the separation of the spouses is admissible to reflect light on the prior relations of the parties. *Hardwick* v. *Hardwick*, 130 Iowa 230, 106 N. W. 639; *Merrill* v. *Leisenring*, 166 Mich. 219, 131 N. W. 538; *Sweikhart* v. *Hanrahan*, 184 Mich. 201, 150 N. W. 833; *Phelps* v. *Bergers*, 92 Neb. 851, 139 N. W. 632; *King* v. *Hanson*, 13 N. D. 85, 99 N. W. 1085; *Sherwood* v. *Titman*, 55 Pa. 77; *Keath* v. *Shiffer*, 37 Pa. Super. Ct. 573; *Rose* v. *Mitchell*, 21 R. I. 270, 43 A. 67; *Morris* v. *Warwick*, 42 Wash. 480, 85 P. 42, 7 Ann. Cas. 687. Upon the record in this case, testimony concerning the relations of the defendant and Mrs. Buckley after the granting of the divorce was properly

received in evidence for the sole and only purpose, as stated in the court's instructions to the jury, "of aiding you in determining the likelihood, if any, of whether or not defendant was in any way responsible for the separation of plaintiff and his wife as heretofore explained to you in these instructions and cannot be considered by you for any other purpose."

The defendant assigns as error the admission, over his objections and exceptions, two letters marked for identification as Exhibit D and Exhibit E. The letter marked Exhibit E reads as follows:

"Ogden Utah Jan 26 1928

"Dear friend John

"things are progressing a little better in my favor with your help now is what I want you to do is to write 3 more letters stating same as others only word it this way where Said one thing there been a fall. and then obmit outher two words that way of explaining it is to much out of place and it to Serious a thing and to plain for family talk it Should never be put in black and white its will look worse on your part when goeing to family now this is a Serious thing and a Secreard thing and not no gossip of thing to be put in black and white consider you are not perfect dont put in two much hatred and revengeful spirit be a little humble and forgiven spirit for you dont know your doom yet nor what you will come to we dont all Sin Same way have all three and other one to be there to our home right after Sunday School Aurther will bring me up we will be in hurry to get back he coming after some things Thanks friend

"Ada"

As bearing upon the admissibility in evidence of the letter marked Exhibit E, there was before the court at the time of its admission this testimony: In support of the allegations of his complaint, the plaintiff testified that prior to the time the divorce proceedings were instituted, the defendant, Mrs. Buckley and the plaintiff had a conversation in which the defendant stated that he had had intimate relations with Mrs. Buckley, and that Mrs. Buckley admitted such to be the fact. Mrs. Buckley was a witness for the defendant. She testified that upon one occasion when she was sick and had no food for herself and her children the defendant gave

her $5 with which to buy food, and that at that time he kissed her, but that otherwise there had never been any improper relations between her and the defendant. We quote the following from the transcript while Mrs. Buckley was giving her testimony in chief.

"Q. Did you ever make a confession, or an alleged confession, in the presence of your husband and Mr. Francis, to the effect that you had, or that improper relations had existed between you and Mr. Francis? A. No, sir, I did not.

"Q. Or that you ever fell, or anything of that kind? A. No, sir, I didn't.

"Q. Is that a fact that you had improper relations with Mr. Francis? A. No, sir, I haven't."

On cross-examination Mrs. Buckley was shown the letter marked Exhibit E, and asked if she had written it. She replied that she had. Thereupon the letter was offered and received in evidence. Some statements in the letter tended to modify or contradict the testimony which Mrs. Buckley gave upon her examination in chief, and as such was properly received in evidence as a part of her cross-examination for the sole purpose of aiding the jury in determining the weight, if any, that should be given to her testimony. In the letter it will be observed she referred to "a fall." On her redirect examination Mrs. Buckley testified that at the time she mentioned "a fall" she had in mind the time that the defendant gave her the $5 and she permitted him to kiss her.

The letter marked Exhibit D reads as follows:

"Brigham City Jan 22 1928

"Mr J W Francis

"I was down to see my family today and I found my wife broken harted John Francis you know you have broke up my home you came to my home and Maid Love to my wife and won her Love and you told her you could not live without her and she feeles the same that she cannot live without you now just stop and think what a great wrong you don her you commit adultery with her that is you had sectual intercorse with her and that ruined her life and she is brokenharted over it. Now you have got to do something abought it at once or I will handle you by law I dont mean maby so you had better see

her at once you know to take a womans virtue is a searious matter so get buesey at once you and her both told me what I have written above I should think a man should tell his wife and not Lye abought it.

"John Buckley"

"Ada R. Buckley."

The foregoing letter is in the handwriting of the plaintiff. So far as appears, the letter was never sent to the defendant. It was produced in court by the plaintiff. Mrs. Buckley testified that, after she secured her divorce, and before this action was begun, the plaintiff came to her and said: " 'Ada, if you will just testify in court that John Francis broke up our home I will get at least $5,000. I will give you $2,000 and keep $3,000 and start up in business.' I says 'John, I would rather have John Francis for a dear friend than all the worst money you can stack up.' " The plaintiff did not deny that such a conversation was had.

Mrs. Buckley further testified that plaintiff came to her while she was seriously sick as a result of a nervous breakdown; that he asked her to sign some paper which appeared to be a letter, that she did not read the letter, and did not know what was in the letter, but that she signed her name to the letter as requested. She admitted that the letter, Exhibit D, contained her signature. There is no evidence in the record which is in conflict with, or tends to contradict, the testimony of Mrs. Buckley as to the circumstances under which she signed the letter, Exhibit D. The argument is made on behalf of the plaintiff that the letter marked Plaintiff's Exhibit D is one of the three letters referred to in Plaintiff's Exhibit E. There is no evidence in the record to support such argument, and the testimony of Mrs. Buckley is to the contrary. The letter marked Exhibit D was received in evidence, as stated in the court's instruction to the jury, "for the sole and only purpose of testing the credibility of the witness, that is to aid you in determining what weight, if any, to give to her testimony." It is further urged on behalf of the plaintiff that counsel for the defendant did not object to the admission of Exhibit D. The contention is untenable. While there seems to have been some confu-

sion as to Exhibits D and E, the record is clear that both court and counsel understood that counsel for the defendant objected to the admission of both exhibits. At first, the trial court sustained the objection to the admission of Exhibit D, but later reversed his ruling and admitted it. After the exhibits were admitted, counsel for defendant moved the court to declare a mistrial because of the admission of the two exhibits. The motion was denied.

It is an elementary rule of law that a witness may be impeached as to testimony given upon a material issue by proof that such witness has made prior self-contradictory statements. If it may be said that there is evidence in this case tending to show that the statements in the letter Exhibit D concerning improper relations between the defendant and Mrs. Buckley are her statements, then such statements were properly received in evidence for the purpose of impeachment, otherwise not. In discussing the law applicable to a situation somewhat similar to that under review, Jones, Comms. on Evidence (2d Ed.) vol. 6, p. 4754, § 2409, says:

> "The subscription of the witness (to a letter or document) is some evidence that he made the statements or authorized them to be made for him and testimony by him that he did not read the statements or hear them read or make them is to be given such force and effect in connection with the subscription and other relevant evidence as the jury may see fit to accord it."

The author cites a number of cases in a footnote, the majority of which support the general rule announced in the text. The following cases are cited as opposed to the rule followed in a majority of the states: *Belskis* v. *Dering Coal Co.*, 246 Ill. 62, 92 N. E. 575, 20 Ann. Cas. 388; *Terry* v. *State* (Tex. Cr. App.) 72 S. W. 382; *Hoagland* v. *Canfield* (C. C.) 160 F. 146. If the minority rule is to be followed, it is clear that it was error to admit the letter, Exhibit D, in evidence to impeach the witness, Mrs. Buckley. The cases supporting the majority are to the effect that, when a deposition of a witness has been taken or the witness

has signed an affidavit, such deposition or affidavit is admissible to impeach the witness, notwithstanding the witness testifies that the deposition is inaccurate or that he did not read or hear read the affidavit. It is also held that proof that a witness has signed what purports to be his statement renders such statement admissible, in the absence of proof that it is not the statement of the witness sought to be impeached. None of the cases cited in support of the majority rule go to the extent that it is necessary to go in order to support the ruling of the court below in admitting the letter, Exhibit D, in evidence. It will be noted that the letter, Exhibit D, does not even purport to be a statement by Mrs. Buckley of any fact. The letter shows on its face that plaintiff, and not Mrs. Buckley, made the statements contained therein. The only testimony touching the circumstances under which Mrs. Buckley signed her name below that of the plaintiff is the testimony of Mrs. Buckley. If her uncontradicted testimony is to be believed, her signature was secured through a fraud perpetrated by the plaintiff. Plaintiff was present at the trial, and testified in his own behalf, but he failed to deny Mrs. Buckley's version of how he secured her signature on the letter. If, as the uncontradicted evidence in this case shows, plaintiff secured the signature of Mrs. Buckley to Exhibit D by fraud, he should not be permitted to take advantage of his own fraud. Upon this record, there is no evidence that plaintiff's Exhibit D was in any sense a statement of Mrs. Buckley, and therefore it follows that the court below was in error in admitting it in evidence. The letter, Exhibit D, was not admissible in evidence for any purpose. The error was manifestly prejudicial to the defendant, and its admission requires a reversal of the judgment.

Defendant also complains because a photograph of the defendant and Mrs. Buckley was received in evidence, and because of certain remarks that were made in the argument to the jury as to the nature of the expression upon defendant's face as shown by the photograph. At the time the photograph was offered in evidence, counsel

for defendant stated that there was no objection. We do not deem the remarks complained of to be of sufficient importance to warrant their discussion in this opinion. Obviously, defendant may not be heard to complain because the photograph was received in evidence when at the trial one of his counsel stated that there was no objection to its being received in evidence.

One Mrs. Besares was called as a witness for the defendant. On cross-examination she was asked if she had ever been convicted of a felony. Defendant objected to the question. It was made to appear that the cause in which the witness had been convicted of a felony was pending on appeal in this court. The trial court directed the witness to answer the question, and she answered in the affirmative. The contention is made on behalf of the defendant that, because an appeal from the judgment of conviction of Mrs. Besares was pending, it was error to require her to answer the question as to whether or not she had been convicted of a felony. This court has held against defendant's contention in such respect. *State* v. *Crawford,* 60 Utah 6, 206 P. 717. We are urged to re-examine the question, but as the cause in which Mrs. Besares was convicted of a felony has, according to counsel's statement, been finally disposed of by this court ordering a new trial which has been had and which resulted in her acquittal, no useful purpose would be subserved by such re-examination. Mrs. Besares having been acquitted, her testimony, if given upon a new trial of this cause, will not be burdened with the conviction of the felony in question.

The defendant was called as a witness, and testified in his own behalf. He stated that, upon one occasion when Mrs. Buckley was sick, he and another elder of Brigham City were called in to administer to her, and that, after they had administered to her, he (the defendant) kissed her. Defendant was then asked to "state whether or not it is a custom here in Brigham City with certain people when they administer to people to kiss them." Counsel for plaintiff objected to the question and the objection

was sustained. Complaint is made of the ruling. We are of the opinion that the defendant should have been permitted to answer the question. If the defendant kissed Mrs. Buckley as a part of a religious rite rather than as a mark of affection, such fact was proper for the jury to consider. The error, however, was cured by the defendant later in his testimony, without objection, testifying that there was such a custom, and that the bishop of defendant's ward followed that practice.

Defendant assigns as error the giving of the following instruction to the jury:

"You are instructed that it was not necessary for the plaintiff to offer direct proof of his wife's affections for him prior to the alleged wrongful acts complained of. The law presumes that a wife who lives with and cohabits with her husband, she bearing children the issue of such cohabitation has an affection for him."

In two cases recently decided by this court, the legal effect of a presumption is discussed and decided. *State* v. *Green,* 6 (2d) 177; In re *Newell's Estate,* 5 P. (2) 230. It is held in each of those cases and other cases there cited that a presumption is a rule of law which may be relied upon as establishing a prima facie case for the party in whose favor the presumption exists until, and only until, the opposing party goes forward with some evidence which tends to overcome the presumption, that a presumption cannot stand in the face of facts, and that, when evidence of facts appears in the cause, the presumption, having served its purpose, passes utterly out of consideration of the trier of the facts. In those cases we condemned instructions which directed the jury to undertake the impossible task of considering and weighing presumptions as if they were evidence. While the court in the instruction complained of did not expressly direct the jury to consider as evidence the presumption that a wife who lives and cohabits with her husband has affection for him, the jury might well have so understood the instruction. The fact that the wife of plain-

tiff was living and cohabiting with him at the time of the alleged wrongful acts of the defendant may be said to tend to support a finding that she, at that time, had an affection for him; but it by no means follows, in the light of the evidence in the record to the contrary, that she in fact had such affection. If it may properly be said, as some courts have said, that there is a presumption that a wife has affection for a husband with whom she lives and cohabits, such presumption is founded upon the facts of living and cohabiting with the husband, and the presumption has no evidentiary force independent of the facts upon which it is founded. In this case the jury had before it the evidence that the plaintiff and his wife were living and cohabiting together as husband and wife at the time of the alleged wrongful acts of the defendant. Such evidence was proper for the jury to consider as bearing upon the question of whether the wife did or did not have affection for the husband, but such evidence may not be aided, strengthened, or rendered irrebutable by a presumption that she had affection for him. A presumption may not be considered or weighed as evidence in a cause, so, likewise, it may not serve the purpose of either adding weight to or rendering conclusive evidence which has been received in a cause. The instruction complained of was calculated to mislead the jury into determining the issues of fact, not upon the evidence alone, but upon the evidence aided by a presumption favorable to plaintiff's cause. The plaintiff is not entitled to the benefits of a presumption in aid of his evidence upon the issue of whether or not his wife had affection for him at the time of the alleged wrongful acts of the defendant.

The court erred in giving the instruction complained of. It follows that the judgment should be, and it accordingly is, reversed. This cause is remanded to the district court of Box Elder county, with directions to grant a new trial. Appellant is awarded his costs on appeal.

STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J., dissents.