[No. 33174.   Department One.   September 15, 1955.]

PERRY D. BOYLE, *Appellant,* v. L. R. CLARK, *Respondent and Cross-appellant.*[1]

[1]Reported in 287 P. (2d) 1006.

*Kennett, McCutcheon & Soderland,* for appellant.

*Olwell & Boyle,* for respondent and cross-appellant.

DONWORTH, J.—Plaintiff sought by this action to recover damages from defendant for the latter's acts and conduct, which allegedly resulted in the alienation of the affections of plaintiff's former wife. The evidence was in conflict on most of the material issues. However, there was testimony, part of which we shall set forth below, which the jury could, and apparently did, believe. It is sufficient to describe the general situation of the parties prior to and during the time of the alleged alienation of affections. Herein plaintiff will be referred to as appellant and defendant will be called respondent.

Appellant was a bus driver for the Greyhound Company and had been so employed for fifteen years. He and his former wife, Mary, had been married about seventeen years, had one son about sixteen years of age, and lived in a house they owned in Seattle. Respondent, then aged 70, was conducting a large dental office in which about twenty-five or thirty persons (dentists and dental assistants) were employed. Mary was first employed in this office on December 15, 1949.

During the first three weeks of her employment in this

office, Mary would arrive home shortly after the office closed at six p. m. Thereafter, however, Mary started coming home later from the office. On January 6, 1950, Mary told her family of having had dinner that evening with respondent. Two or three times each week during the next three weeks, Mary told her family of having been dining and dancing with respondent or riding in his Cadillac automobile. Appellant and his son many times saw respondent bring Mary home in the Cadillac from such events between the hours of eight p. m. and one a. m.

In the latter part of January, Mary asked her husband's permission to accept an invitation she had been offered for an all-expense-paid trip to San Francisco. When appellant refused his permission, she was disappointed. About February 1, 1950, she asked appellant for his permission to make "the trip of her lifetime", which was an all-expense-paid trip to Honolulu. Appellant refused to consent to her making this trip.

Thereafter, Mary's attitude changed. She continued to come home late at night but refused to tell her husband where and with whom she had spent the evening. She neglected the housework which previously she had attended to. She expressed a desire to be as "free as the birds."

About June 1, 1950, she discontinued occupying the bedroom and thereafter slept in a sleeping bag on the living room floor.

In mid December, 1950, after Mary had made specific mention of wanting a divorce, appellant, on two occasions, saw Mary and respondent on downtown streets. On one occasion they were walking together arm in arm, and on the other, appellant and his son saw Mary meet respondent on the street and watched them enter a club.

During the month of December, 1950, Mary cooked but one meal for her family, and that meal consisted of warmed-up leftovers from respondent's Christmas party. Thereafter, the relations between appellant and his wife became progressively worse, eventually culminating in Mary's moving from the family home on April 12, 1951. Thereafter,

she lived in various downtown apartments. On April 26, 1951, appellant commenced an action for divorce.

On May 3, 1951, appellant, accompanied by his mother and his son, saw respondent and Mary riding in the Cadillac on Pike street. They followed them to a point beyond Woodinville, where respondent stopped his car and appellant stopped his car. As to exactly what happened then, the five persons present testified differently, but all admit there was a "scene."

Thereafter, during the year from May, 1951, to May, 1952, Mary and respondent were seen together a number of times in his car and at restaurants by appellant and his son. Several discussions were had between Mary and appellant regarding a possible reconciliation, but none materialized, and on July 21, 1952, appellant was granted a divorce from Mary.

On June 22, 1953, appellant married a widow whom he had met in Spokane shortly before. Both of them testified that this had turned out to be a happy marriage.

This action was commenced on December 2, 1953, by the filing of the complaint. On December 11, 1953, respondent's demurrer to the complaint on the ground that the action was not commenced within the time limited by law was overruled. On February 15, 1954, respondent filed an answer which put in issue the material allegations of the complaint and, by way of affirmative defense, alleged that any loss suffered by appellant was due solely to his own cruelty to, and personal indignities toward, his former wife. This new matter was denied in the reply.

The case was tried before the court sitting with a jury and resulted in a verdict for appellant in the sum of twenty thousand dollars. At the trial, the issue of the statute of limitations was raised by respondent when challenging the sufficiency of appellant's evidence at the time he rested and at the close of the case. The trial court denied both challenges.

Respondent moved, in the alternative, for judgment n.o.v. on the grounds that the action was not commenced within the time limited by law and that there was no evidence to

support the verdict, or, in the alternative, for a new trial on the grounds, among others, that the verdict was so excessive as to indicate that it was the result of passion and prejudice and that substantial justice had not been done.

After argument, the motion for judgment n.o.v. was denied but the motion for a new trial was granted. The court's reasons for granting the motion for a new trial are stated in its order, as follows:

"IT IS FURTHER HEREBY ORDERED that defendant's alternative motion for a new trial for the following causes materially affecting the substantial rights of defendant: Damages so excessive as to unmistakably indicate that the verdict must have been the result of passion or prejudice; and that substantial justice has not been done, be and the same hereby is granted upon each and both of the aforesaid grounds.

"THE COURT FINDS AND CONCLUDES that the damages awarded by the jury are so excessive as to indicate conclusively that there was passion or prejudice. The plaintiff himself brought the action for divorce, was actually remarried at the time he filed the complaint in this action (to a woman six years younger than his first wife), and he claimed to be devoted to his second wife. The evidence indicates that the plaintiff took his young son with him while he followed defendant and Mary Boyle and caused this same son to be subpoenaed at the trial to testify against his mother. The Court cannot believe that plaintiff was damaged in the sum of $20,000, or even one-tenth that amount, and the award of the jury is so excessive as to indicate conclusively passion and prejudice.

"THE COURT FINDS AND CONCLUDES that substantial justice was not done in this case in that the verdict of the jury is against the overwhelming weight of the evidence. Conceding that there was some inference from the evidence to take the case to the jury, still there was no evidence that the defendant ever bestowed any gifts upon Mary Boyle or that she ever received a favored position in his office or that he even visited her in the two or three apartments she occupied after her separation from the plaintiff. In fact, the evidence on this last point was overwhelming that he did not so visit her at any time. It is inconceivable to me that the defendant and Mary Boyle could have been carrying on a clandestine affair without there being available to the plaintiff much more substantial evidence thereof than that shown.

I think this is particularly true in view of the admission that he was at various times attempting to obtain evidence against the defendant. It is my opinion that substantial justice is not done by this verdict; . . . "

Appellant has appealed, and assigns error to the entering of the order granting a new trial. Respondent has cross-appealed and, while he argues in support of the order granting the new trial, assigns error to the adverse rulings made by the court in disposing of (a) his demurrer, his challenges to the sufficiency of the evidence, and his motion for judgment n.o.v. upon the ground that the action was not commenced within the time limited by law, and (b) his challenge to the sufficiency of the evidence and motion for judgment n.o.v. upon the ground that there was no evidence or reasonable inference from the evidence to justify the verdict.

▆ Since respondent did not elect to stand on his demurrer, but answered the complaint, we need not review the correctness of the court's action in overruling the demurrer. *Pacific Tel. & Tel. Co. v. State Tax Comm.*, 180 Wash. 673, 42 P. (2d) 420. In that case, this court, in dealing with a similar situation, said:

"Not having elected to stand upon their demurrer and not having refused to plead further, the ruling of the court upon the demurrer is not now before us, as no appeal lies from the overruling of the demurrer unless the party adversely affected elects to stand thereon and refuses to plead further and a judgment is entered."

More than two months elapsed between the time the demurrer was overruled and the answer was filed. The answer did not plead the statute of limitations as an affirmative defense or in any other manner. The record does not disclose any motion having been made by the respondent for leave to amend his answer to incorporate such affirmative defense therein.

▆ The statute of limitations is an affirmative defense. *State ex rel. Teeter v. Superior Court*, 110 Wash. 255, 188 Pac. 391, *Dolan v. Baldridge*, 165 Wash. 69, 4 P. (2d) 871. Any party desiring to avail himself of this defense must

affirmatively plead it. Otherwise, it is considered as having been waived. RCW 4.16.010, 4.32.070, 4.32.080, 4.32.090, 4.32.190. *State ex rel..Teeter v. Superior Court, supra; Clark County, etc., Corp. v. Hiim,* 177 Wash. 251, 31 P. (2d) 905.

In *State ex rel. Teeter v. Superior Court, supra,* it is said at page 257:

"The statute of limitations is a defense, not a bar to an action. It is a defense, moreover, that may be waived, and a defendant does waive it when he defaults, or when he appears and fails to interpose it as a defense. Rem. Code. §§ 259, 260, 261. *Bay View Brewing Co. v. Grubb,* 31 Wash. 34, 71 Pac. 553. Hence, jurisdiction to entertain an action is not affected by the fact that it may appear upon the face of the complaint that the claim sued upon is subject to the bar of the statute of limitations, and this being true, it cannot be said that the court in entertaining such an action is acting without jurisdiction."

The trial court, when called upon to rule on respondent's challenge to the sufficiency of the evidence at the close of appellant's case, ruled adversely to respondent and at that time called to counsel's attention the fact that the statute of limitations was not pleaded as an affirmative defense. Since the statute was not so pleaded and no motion was made for leave to amend the answer in that respect, the court committed no error in its rulings on that issue.

Next, respondent argues that, since there was no proof that the acts and conduct of respondent were done for the purpose of causing a diminution of Mary Boyle's affection for appellant, there was no evidence or reasonable inference from the evidence to justify the verdict, and that therefore the court erred in overruling the challenge to the sufficiency of the evidence and in denying the motion for judgment n.o.v.

The court did not err in ruling on these matters for the reason that respondent's purpose need not be proven independent of his acts. His purpose may be inferred by the trier of the facts from his acts and conduct, because, in the eyes of the law, he is held to have intended the natural and probable consequences of his acts. *Lankford v. Tombari,*

35 Wn. (2d) 412, 213 P. (2d) 627, 19 A. L. R. (2d) 462, and cases cited therein.

Thus concluding that the cross-appeal is without merit, we next direct our attention to the appeal.

■ The purpose of an action for alienation of affections is to recover damages for the loss of consortium and conjugal affection. Prosser on Torts, p. 917, § 101. These rights at best are intangible, and the damage to the injured party, occasioned by their loss, is not a matter susceptible of mathematical computation. It is not to be expected that each of the rights here sought to be vindicated would be attributed a like monetary valuation by any two persons.

■ Inasmuch as the order granting the motion for new trial does not, in stating the court's reasons therefor, refer to anything which is not shown in the record, we conclude that the court did not grant the motion because of any matters dehors the record. In *Johnson v. Howard*, 45 Wn. (2d) 433, 275 P. (2d) 736, this court said:

"It is no longer necessary for us to *assume* that, where the trial judge has said that the damages were excessive (or inadequate), he was influenced by conditions existing and circumstances occurring during the trial, which could not be made part of the record. If he was actually so influenced, he is to say so in giving his reasons for granting a new trial. Where he does not say so, and even though he gives as an additional reason that substantial justice has not been done, it will be assumed that the justification for the action taken is to be found in the record."

■ We have reviewed with great care the evidence in this case and the reasons given by the court in its order granting the new trial. After so doing, we cannot find any ground for holding the verdict to be so excessive as to indicate passion and prejudice on the part of the jury. The trial court's ruling appears to have been based almost entirely upon the amount of the verdict. There was ample evidence which, if believed by the jury, would support such a verdict as was rendered. Reasonable men might well have given a larger verdict on the evidence presented, and the mere fact that the jury placed a greater monetary value

than the court did upon the loss suffered by appellant is not in itself an indication of passion and prejudice. Under the facts of this case, we do not think that the jury, in arriving at its verdict, was required to consider, as mitigating the damages, the factors which strongly appealed to the court as shown by its order.

The following are some instances where this court has held that the alleged excessive damages awarded by the jury in actions for alienation of affections were not shown to have been the result of passion and prejudice.

*Speck v. Gray,* 14 Wash. 589, 45 Pac. 143 (1896)—verdict of $15,000;

*Lyen v. Lyen,* 98 Wash. 498, 167 Pac. 1113 (1917)—verdict of $15,000;

*Regenvetter v. Ball,* 131 Wash. 155, 229 Pac. 321 (1924)—verdict of $20,000;

*Lankford v. Tombari,* 35 Wn. (2d) 412, 213 P. (2d) 627 (1950)—verdict of $15,000.

See, also, *Kenworthy v. Richmond,* 95 Wash. 407, 163 Pac. 924 (1917), where it is stated that in such cases the amount of the award is peculiarly within the province of the jury, and that the court would not be warranted in interfering therewith unless the amount awarded was so grossly excessive as to shock the moral sense.

The general rule regarding this class of cases is stated in a recent annotation in 36 A. L. R. (2d) 549, § 2, as follows:

"While there appears to be little doubt of the judicial power to correct an excessive or inadequate verdict in actions for alienation of affections, criminal conversation, or seduction, the courts have frequently expressed their reluctance to interfere with jury awards in such cases, because of the difficulty of evaluating the elements of recovery involved, and the punitive nature of the awards in most such cases."

The instances (pointed out by the trial court in its order) as to which evidence was lacking, such as no proof of gifts, favored treatment as an employee, or acts of adultery, are not matters which were vital to the cause of action. The record contains abundant other evidence (which the jury

had a right to believe) which proved appellant's cause of action and supports the amount of verdict.

In its argument in support of the order entered granting a new trial, respondent urges that at the trial the court committed prejudicial error (a) in admitting hearsay testimony and testimony of the respondent's conduct subsequent to the separation of April 12, 1951, and (b) in giving instructions No. 1 and No. 5 and refusing to give certain instructions offered by respondent.

■ With regard to the alleged error in the admission of evidence, we do not think that the court erred in that respect. For the purpose of proving the change occurring in Mary Boyle's mental attitude and her state of mind, declarations made by her outside the presence of respondent were admitted in evidence over objection of respondent. The admission of this evidence for this purpose was not error. *Wendell v. Brown,* 142 Wash. 391, 253 Pac. 452; *Doke v. United Pac. Ins. Co.,* 15 Wn. (2d) 536, 131 P. (2d) 436, 135 P. (2d) 71.

■ Evidence of the acts and conduct of respondent subsequent to the separation of the parties, and after the divorce decree was entered, was admitted to prove the course of conduct followed by respondent in alienating Mary Boyle's affection from appellant. The court did not err in admitting this evidence for this purpose. *Morris v. Warwick,* 42 Wash. 480, 85 Pac. 42; *Eklund v. Hackett,* 106 Wash. 287, 179 Pac. 803.

Parenthetically, the evidence relating to respondent's acts subsequent to the divorce, was that (a) in December, 1952, respondent drove Mary Boyle to a drug store near appellant's home where she left a Christmas present for her son, and (b) in March, 1953, appellant, while driving his Greyhound bus on its scheduled route, met and passed, on the highway near Seattle, respondent and Mary Boyle riding in respondent's automobile.

This evidence was, as above pointed out, admitted for limited purposes, and the jury was so informed at the time of its introduction. The instructions given to the jury re-

iterated the limited purposes for which this evidence was admitted and admonished the jury to consider such evidence for the purposes enumerated and none other. Nothing is called to our attention to indicate that the jury failed to heed such admonition. We conclude, therefore, that the court did not err in admitting the evidence.

We have reviewed the matter of the error allegedly committed with regard to the instructions concerning which respondent complains. We do not deem it necessary to set forth herein the instructions *verbatim* nor an extended discussion of the merit, or lack of merit, of respondent's contention. It suffices to say that, in our opinion, the instructions given were correct and proper, and that respondent's proposed instructions which were not given by the court were objectionable in many respects and hence properly refused by the court.

On the cross-appeal, the orders complained of therein are affirmed. On the appeal, the order granting a new trial is reversed and the court is instructed to enter judgment on the verdict. Appellant will recover his costs in this court.

HAMLEY, C. J., SCHWELLENBACH, FINLEY, and OTT, JJ., concur.

January 27, 1956. Petition for rehearing denied.