LESTER W. GORDER, JR. v. ROBERT T. SIMS.

237 N. W. 2d 67.

December 5, 1975—No. 44794.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, O. C. Adamson II, Mary Jeanne Coyne,* and *W. D. Flaskamp,* for appellant.

*Torinus & Knutson* and *Richard H. Knutson,* for respondent.

Heard before Sheran, C. J., and Yetka and Scott, JJ., and considered and decided by the court en banc.

SHERAN, CHIEF JUSTICE.

Appeal from a judgment of the district court awarding plaintiff $20,000 as damages in an action for alienation of affections. Affirmed.

■ The question on appeal is whether the evidence disclosed by the record is adequate to support these essential elements of the cause of action as set forth in Pedersen v. Jirsa, 267 Minn. 48, 125 N. W. 2d 38 (1963): (1) That plaintiff, Lester W. Gorder, Jr., had the affections of his wife, Barbara, until defendant, Robert T. Sims, came into her life; (2) that plaintiff

lost his wife's affections; [1] (3) that defendant took an active and intentional part in causing plaintiff to lose his wife's affections; [2] (4) that defendant acted willfully and intentionally. [3]

In setting out the evidence pertaining to each of these elements of the cause of action, we adhere to the rule that the respondent is entitled to have accepted that view of the evidence most favorable to the jury's verdict. See, Young v. Hansen, 296 Minn. 430, 209 N. W. 2d 392 (1973).

(1) *Existence of Affection*

Plaintiff, Lester W. Gorder, Jr., and Barbara Gorder, both apparently talented and well-educated, were married in 1955 after a courtship of about a year. They became the parents of one child, a daughter born December 21, 1960. During most of the marriage, plaintiff was employed as a stockbroker. They lived together in different homes in Edina while married, and, as late as January 1969, they purchased a new one at 5600 Woodcrest Drive in that city. Mrs. Gorder contributed $10,000, saved from her earnings, toward the purchase price. There is evidence which would support a jury conclusion that although Lester Gorder, Jr., used alcohol excessively at times, his relationship with his wife, while marred by occasional conflicts, was mostly affectionate and intimate until the events which led to the divorce and to this action. She not only maintained the home and did the cooking, the washing, and light household duties but, in addition, did remunerative work outside the home, sharing her earnings with her husband. The evidence supports a jury conclusion that the Gorders enjoyed social activities with one another and found mutual interest in vacation trips to distant places.

---

[1] See, 42 C. J. S., Husband and Wife, § 687b; 41 Am. Jur. 2d, Husband and Wife, §§ 466, 467.

[2] See, 42 C. J. S., Husband and Wife, § 669; 41 Am. Jur. 2d, Husband and Wife, § 469.

[3] See, 42 C. J. S., Husband and Wife, § 662; 41 Am. Jur. 2d, Husband and Wife, § 470.

There is also testimony indicating that plaintiff's drinking habits placed a strain on the family relationship and that the Gorders had sought legal and marriage counseling and advice from time to time with respect to the marriage. The jury could have found, on the basis of this testimony, that the affection of Barbara Gorder for her husband had terminated because of his drinking habits and his behavior toward her when under the influence of liquor. On the other hand, it could have found, and apparently did find, either that plaintiff's drinking habit was not as severe as defendant claimed or that Barbara Gorder's affection for her husband was so great as to remain unaffected by this weakness.[4]

(2) *Loss of Affection*

There is ample evidence to support a jury finding that by 1971 Barbara Gorder had transferred her affections to defendant Sims. The jury was entitled to accept the testimony of plaintiff that in May of 1971 his wife told him in the presence of the defendant that she was in love with Sims. If the jury accepted this testimony, as it was entitled to do, it could believe that the relationship between Barbara Gorder and Sims between 1968 and 1971 was not so platonic as was represented by them. The jury would have been justified in concluding that meetings between Barbara Gorder and Sims in May and June of 1971, at strange hours and in unusual places, were not consistent with a continued affection for her husband.

It is true, as defendant claims, that there is testimony in the record from which the jury, had it chosen to do so, could have concluded that Barbara Gorder looked upon defendant as a counselor and friend in need rather than as a paramour. But it did not do so and we are not free to say that the jurors erred in

---

[4] The fact that a husband and wife are having marital difficulties is not a defense to an action for alienation of affection, although it may be material on the issue of damages. See, Alaimo v. Schwanz, 56 Wis. 2d 198, 201 N. W. 2d 604 (1972). See, also, McKinnon v. Chenoweth, 176 Ore. 74, 155 P. 2d 944 (1945).

giving the evidence an interpretation supportive of plaintiff's claims.[5]

(3) and (4)  *Willful Causation*

The evidence, considered as a whole, supports a finding that defendant accomplished the alienation of Barbara Gorder's affections from her husband willfully and intentionally.

The Gorders had become acquainted with Mr. and Mrs. Sims in about 1962. They became friends, exchanging hospitality and enjoying many social events together. The relationship between the two couples was overtly harmonious and constructive until 1968, when Gorder experienced a physical disability that required hospitalization and subsequent confinement in a body cast for some time after his release. In March of that year, Gorder and Sims engaged in a conversation in the Gorder home during the course of which Gorder challenged Sims to affirm or deny reports that Sims and Barbara Gorder "had been seeing each other, having dinner together, lunch together and meeting together in the country in a car on the highway and getting from one car to the other * * *." According to Gorder, Mr. Sims admitted that they had. And further, "he said that because I had been laid up so long and wasn't very good company * * * that Barbara needed some companionship so they met."

Gorder testified that he accepted the assurances of his wife and of the defendant and persuaded himself that the association was not of serious or permanent significance. The Gorders moved into a new home in 1969 and fixed it up to be, in plaintiff's words, "one of the most beautiful showplaces of any home that I had ever seen." Mrs. Gorder made payments on the home during a period which was one of financial stress for her husband. This was, he testified, "[m]oney that she had saved over the years when I had more money." But in May 1971 a conversation occurred, according to Gorder, which, the jury could have

---

[5] It is not necessary for the plaintiff to prove a total loss of affection on the part of the disaffected spouse as a condition for recovery. Alaimo v. Schwanz, *supra.*

found, demonstrated that Sims was determined to displace plaintiff in the affections of Barbara Gorder. The place of this conversation was the new home at 5600 Woodcrest Drive in Edina. The time was about May 17, 1971. The testimony was as follows:

"I asked Mr. Sims if it were true what his wife had told me at St. Mary's Hospital * * * two days before * * * that Bob and Barbara had been together for some time and had been—

"Q. What did he reply to that question?

"A. He said yes, I have been in love with Barbara Gorder for many, many years, and *I'm going to win her, I'm going to get her, I want her.*[6]

"Q. Was there any other conversation that took place at that time?

"A. * * * [A] short time later after a long period of silence I asked my wife if she was in love with him, and she waited a long time, and then said, *'Yes, I love Bob Sims, but I also love you, Les Gorder.'* "[7] (Italics supplied.)

It is true that Sims denied that this conversation had taken place, but the jury had the right to accept this testimony of plain-

---

[6] See, Bathke v. Krassin, 82 Minn. 226, 84 N. W. 796 (1901); Leucht v. Leucht, 129 Ky. 700, 112 S. W. 845 (1908); Tucker v. Tucker, 74 Miss. 93, 19 So. 955 (1896); Vallone v. Vallone, 228 Ill. App. 543 (1923). See, also, 42 C. J. S., Husband and Wife, § 688b(1).

[7] In Stoll v. Plarr, 322 S. W. 2d 712, 715 (Ky. 1959), the Kentucky Court of Appeals, in considering a similar statement, said: "* * * It is argued that the evidence showed that Mrs. Plarr continued to have affection for her husband, and was willing to continue to live and cohabit with him, and that the divorce was at his instance, not hers. This seems to us to be the equivalent of arguing that if the husband receives a fair share of his wife's affection he is not damaged by her devoting a substantial amount of her companionship, society and affection to another man. We conceive the law to be that, as the word 'affection' is used in this connection, the husband is entitled to *all* of the affection." Recovery may be had for partial alienation. Morey v. Keller, 77 S. D. 49, 85 N. W. 2d 57 (1957); Prosser, Torts (4 ed.), § 124; Alaimo v. Schwanz, *supra.*

tiff, particularly in view of other corroborative circumstances disclosed by the record.

Our conclusion is that the evidence supports the jury's finding that defendant had deliberately alienated the affections of plaintiff's wife and that the proof of this alienation meets the requirements of Pedersen v. Jirsa, 267 Minn. 48, 125 N. W. 2d 38 (1963). See, generally, 42 C. J. S., Husband and Wife, § 689. The fact that plaintiff sued his wife for divorce and alleged long-standing mistreatment does not foreclose this result. Annotation, 96 A. L. R. 2d 903, 909. It was proper to consider events taking place after the divorce action was instituted, because this conduct on the part of the defendant gave meaning to his behavior preceding the commencement of the divorce action. See, Paulson v. Scott, 260 Wis. 141, 50 N. W. 2d 376 (1951).

■ It is asserted, but not strenuously argued, that the verdict in the amount of $20,000 is not sustained by the evidence and is excessive. Acknowledging the fact that the ascertainment of damage in cases such as this is most difficult, we believe the allowance to have been acceptable in amount. Considerations of sentiment aside, the fact that plaintiff's wife willingly contributed $10,000 toward the purchase of a family home approximately 2 years before the disruption of the marriage makes the jury's assessment of damages seem reasonable.[8]

■ Defendant argues that actions for alienation of affection are contrary to public policy and should be eliminated altogether. We are referred to Prosser, Torts (4 ed.), § 124, p. 887, where the author states:

"* * * There is good reason to believe that even genuine actions of this type are brought more frequently than not with purely mercenary or vindictive motives; that it is impossible to compensate for such damage with what has derisively been called 'heart balm;' that people of any decent instincts do not bring an

[8] See, Kleber v. Allin, 153 Minn. 433, 190 N. W. 786 (1922); Spangenberg v. Christian, 151 Minn. 356, 186 N. W. 700 (1922).

action which merely adds to the family disgrace; and that no preventive purpose is served, since such torts seldom are committed with deliberate plan. Added to this is perhaps an increasing notion of personal or even sexual freedom on the part of women, and the feeling, illustrated by the current attitude toward divorce, that a home so easily broken up is not worth maintaining." [9]

Whatever the reasons which support this point of view, they have not been persuasive to the legislature of the State of Minnesota.[10] So far as any institution can, it represents the attitude of the public in matters of this kind. Until the legislature declares that individuals are free to intrude themselves upon the special relationship which exists between a husband and wife, we feel no compelling sense of urgency to do so. It may be true

---

[9] See, e. g., Hanfgarn v. Mark, 274 N. Y. 22, 8 N. E. 2d 47, appeal dismissed, 302 U. S. 641, 58 S. Ct. 57, 82 L. ed. 498 (1937); Fearon v. Treanor, 272 N. Y. 268, 5 N. E. 2d 815, 109 A. L. R. 1229 (1936), appeal dismissed, 301 U. S. 667, 57 S. Ct. 933, 81 L. ed. 1332 (1937). In these cases, a statute abolishing heart-balm causes of action was upheld against constitutional attack.

Such acts have been suggested in Minnesota. See, Feinsinger, *Legislative Attack on "Heart Balm,"* 33 Mich. L. Rev. 979 (1935).

In 1937, five states (Pennsylvania, Indiana, New York, New Jersey, and Michigan) had abolished the tort. See, Note, 50 Harv. L. Rev. 1225, 1247, note 37.

Clark, *The Law of Domestic Relations in the United States,* § 10.2, offers a competent analysis of the tort and its shortcomings. Clark's conclusion is that alienation of affections should be done away with for a multitude of reasons, some of which are applicable to this matter. See Goldberg v. Musim, 162 Colo. 461, 472, 427 P. 2d 698, 704 (1967), where it is said that some 14 states have eliminated the tort. See, also, 41 Am. Jur. 2d, Husband and Wife, § 463.

See Note, 48 Norte Dame Lawyer 426 (1972), where the author advocates retention of the tort, but suggests that any abuses it might encourage be curtailed by judicial scrutiny.

[10] For a discussion of the power of the legislature to control actions for alienation of affection, see Goldberg v. Musim, *supra.* See, also, 42 C. J. S., Husband and Wife, § 660 and cases cited, notes 41 to 44.

that rules relating to the behavior of married persons have become relaxed in current times, but, whatever the extent of that relaxation, the jury (presumably representative of community mores in Hennepin County), having been fully instructed by the trial court as to the essential elements of the cause of action, concluded that permissiveness had been abused in this case by defendant, to plaintiff's damage. So long as the evidence supports that conclusion reasonably, we believe that the verdict of the jury should be upheld.

■ On this appeal from the judgment in favor of plaintiff, defendant argues that the evidence in support of the verdict is so weak that this court should at least grant a new trial. Although the trial court denied a motion for dismissal at the close of plaintiff's case and denied defendant's motion for a directed verdict at the close of all testimony, it did, in denying defendant's motion for judgment notwithstanding the verdict, order a retrial. This court, in Gorder v. Sims, 297 Minn. 346, 347, 211 N. W. 2d 369, 370 (1973), voided the order directing a retrial, upon the ground that "the trial court had no power to grant a new trial under the circumstances herein since defendant had not requested that relief and the time in which the court could grant a new trial on its own initiative had expired."

The authority of this court to grant a new trial is somewhat broader than that of the district court, and we could direct a new trial on all or part of the issues in this case if we were satisfied that the interests of justice so required.[11] We do not do so because we feel that any jury to which this case is submitted will have precisely the same problems as have been dealt with by the jury which has already decided it.

---

[11] Compare Rule 103.04(1), Rules of Civil Appellate Procedure, authorizing any action "as the interests of justice may require," with Rule 59.01, Rules of Civil Procedure, which specifies exclusive grounds for new trial. See, Ginsberg v. Williams, 270 Minn. 474, 135 N. W. 2d 213 (1965); Albright v. Henry, 285 Minn. 452, 174 N. W. 2d 106 (1970). 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 606.

If plaintiff's testimony is to be believed, that testimony, together with the corroborating evidence given in support of it, is sufficient to establish that defendant deliberately alienated the affections of plaintiff's wife, to his damage. On the other hand, if the testimony of defendant and the seven witnesses, including Mrs. Gorder, called in his behalf is to be accepted, the jury would have concluded that any affection which Barbara Gorder ever had for her husband was lost, if at all, because of plaintiff's own misbehavior. We do not see how a second jury would be in any better position to assess this conflicting evidence than was the one which has already decided it.

We could grant a new trial on the issue of damages only, but no standard of measurement is available which could demonstrate that a verdict in the amount of $10,000 or in the amount of $30,000 would be more reasonable than the one which has already been returned. There was no evidence of significance tendered by defendant in the first action which was rejected. No claim is made that evidence tendered by plaintiff was improperly received. No claim is made that there is newly discovered evidence available to either party which would make it more likely that a second jury's verdict would be an improvement on the one previously rendered. In this situation, we do not feel that a re-enactment of the unhappy situation underlying this lawsuit would serve a useful purpose.

Affirmed.

OTIS, JUSTICE (dissenting).

As the majority points out, actions of this kind are not a favorite of the law and have been abolished by statute in a number of jurisdictions. I share the concern demonstrated by the trial judge in his abortive effort to grant defendant a new trial, Gorder v. Sims, 297 Minn. 346, 211 N. W. 2d 369 (1973).

Jury awards in actions of this kind are explicitly or implicitly in the nature of punitive damages. Accordingly, they should be limited to an amount which is commensurate with the gravity of defendant's intrusion into plaintiff's marital relationship. The

record here is replete with evidence that plaintiff's own misconduct played a substantial role in alienating his wife's affections. Under these circumstances and in the light of the trial court's judgment that a new trial should have been granted, I believe the interests of justice would be better served if the verdict were reduced to the sum of $5,000.

TODD, JUSTICE (dissenting).
I join in the dissent of Mr. Justice Otis.

MR. JUSTICE MACLAUGHLIN and MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.