Greg NORTON, Plaintiff and Appellee,

v.

J. Ralph MACFARLANE, M.D., Defendant and Appellant.

No. 880248.

Supreme Court of Utah.

Sept. 12, 1991.

STEWART, Justice:

This is an interlocutory appeal from the trial court's order denying defendant's motion to dismiss plaintiff's tort actions for alienation of affections and criminal conversation. On this appeal, we are again urged to abolish the tort of alienation of affections as well as the tort of criminal conversation.

Plaintiff Norton's complaint alleges that he and his wife, Sherry Norton, had three children during their marriage and that they lived happily and contentedly together until the summer of 1985. The complaint alleges that at that time defendant Macfarlane, a physician, developed an improper and undue influence over Sherry Norton and that he induced her by means of that influence to abandon and leave her husband, home, and children. The complaint further alleges that Macfarlane knew that Sherry Norton was plaintiff's wife and that he nonetheless committed adulterous acts with her. Defendant filed a motion under Rule 12(b)(6) of the Utah Rules of Civil Procedure to dismiss both of plaintiff's claims for failure to state a claim upon which relief can be granted. The trial court denied the motion, and we granted a petition for interlocutory appeal.

## I. THE TORT OF ALIENATION OF AFFECTIONS

We again revisit the issue of whether marital consortium interests should be protected by the tort of alienation of affections. We affirmed the continued viability of that action in *Nelson v. Jacobsen,* 669 P.2d 1207 (Utah 1983). Defendant's argument in this case is that abolition of the tort is required by our subsequent decision in *Hackford v. Utah Power & Light Co.,* 740 P.2d 1281 (Utah 1987), and by the Legislature's adoption in 1987 of irreconcilable differences as a ground for divorce. *See* Utah Code Ann. § 30–3–1(3)(h) (1989). Defendant also asserts that the tort should be abolished for a number of other reasons and that Utah should join what he asserts is the "mainstream of American legal opin-

Donald B. Holbrook, David R. Money, David N. Sonnenreich, Salt Lake City, for Ralph Macfarlane.

Jean R. Babilis, Ogden, Jody L. Howe, Salt Lake City, for Greg Norton.

ion" by abolishing the tort of alienation of affections.

In *Nelson*, a divided court sustained the viability of the tort of alienation of affections and rejected almost all the arguments defendant asserts here for abolishing that tort. We need not traverse again the same ground that was covered in *Nelson*. Defendant does, however, raise a few new arguments in contending that the tort of alienation of affections should be abolished. We address only those issues and rely on *Nelson* as an adequate answer to defendant's remaining arguments.

First, defendant argues that the Court should reassess the holding in *Nelson* in light of our intervening opinion in *Hackford v. Utah Power & Light Co.*, 740 P.2d 1281 (Utah 1987), which, again by a divided court, held that a spouse has no independent action against a tort-feasor for loss of consortium arising from a physical injury caused to the other spouse by the tort-feasor.[1] Defendant insists that because *Hackford* denied protection to the consortium interests of a spouse while *Nelson* protected the consortium interests of a spouse, those cases are inconsistent and cannot logically coexist. Defendant fails, however, to recognize significant differences between those two cases.

*Hackford* did not address the issue whether the intentional tort of alienation of affections should be abolished. The issue in *Hackford* was whether one spouse had an independent cause of action for damages for loss of the other spouse's consortium because of a physical injury negligently inflicted on the other spouse by a third party. The Court held that the Married Woman's Act of 1898, which states in part that "[t]here shall be no right of recovery by the husband on account of personal injury or wrong to his wife," Utah Code Ann. § 30-2-4 (1989), barred a nonphysically injured spouse from suing on an independent cause of action for loss of consortium as a result of physical injury to the other spouse. *See Hackford*, 740 P.2d at 1288. Justice Zimmerman wrote the lead opinion in *Hackford*. Justice Howe wrote an opinion concurring in the result, which was joined by Chief Justice Hall. Justice Durham wrote a dissenting opinion, concurred in by the author of this opinion. A common rationale relied on by both Justices Zimmerman and Howe was that the Married Woman's Act and the doctrine of *stare decisis* precluded recognition of a cause of action for loss of consortium caused by the negligent conduct of a third party. Justice Howe also explicitly stated that the cause of action asserted in *Hackford* was derived from the primary, personal injury caused the other spouse, and therefore was distinguishable from a direct cause of action for loss of consortium by a tort-feasor's alienation of the affections of one spouse for the other. 740 P.2d at 1287. *Hackford* does not, therefore, stand for the proposition that consortium is an interest undeserving of judicial protection.[2] Justice

---

1. Prosser and Keeton explain and define the concept of consortium:

> The husband's interest in his relation with his wife first received recognition as a matter of her services to him as a servant. Over a period of some centuries it took form as something considerably broader than this, which was given the name of "consortium." Consortium was said to be made up of a bundle of legal rights to the alliterative trio of the services, society and sexual intercourse of the wife. To these elements the modern law has added a fourth, that of conjugal affection. The rights of the husband extend to all four; and while it is seldom that the defendant's conduct interferes with only one of them, it now seems clear in nearly all jurisdictions that such interference with any one will be sufficient as a foundation for the action. The loss of services, essential at the beginning, no longer is indispensable, and is now only one element upon which the action may be based.

W. Keeton, *Prosser and Keeton on the Law of Torts* § 124, at 916 (5th ed. 1984).

2. Justice Zimmerman's dissent mischaracterizes the effect of the concurring opinion in *Hackford*. There was no three-judge lead opinion, as he states. His own opinion did not address the tort of alienation of affections. Justice Howe's opinion concurred in the result only of Justice Zimmerman's opinion. Justice Howe did, however, address that tort and specifically argued that retention of that tort was consistent with the result in *Hackford*. Both Justice Durham and I would have recognized the consortium interest in that case. In short, four justices indicated that they would recognize consortium. Notwithstanding Justice Zimmerman's response in footnote 1 of his dissenting opinion to the

Durham's dissent argued that consortium was indeed a valid, protectible interest, and that injury to consortium interests gave a nonphysically injured spouse an independent cause of action for that loss. She contended that neither the Married Woman's Act nor the doctrine of *stare decisis* precluded such an action.[3]

Defendant's argument that *Hackford* and *Nelson* are in irreconcilable conflict is correct only insofar as the result is concerned. They are not inconsistent in principle, however, because both support the proposition that the interests included in the term consortium are legitimate interests deserving of legal protection. Because the Court's refusal in *Hackford* to recognize a nonphysically injured spouse's cause of action for a loss of consortium arising from a physical injury to the other spouse was based on statutory construction and *stare decisis*, that case did not undermine this Court's ruling in *Nelson*. Nor does *Hackford* have any force in persuading us that the common-law cause of action at issue here should be abolished.

Furthermore, even if we were to reverse *Nelson* and abolish the tort of alienation of affections to achieve consistency of result with *Hackford*, we still would not bring consistency of result to Utah law in the sense that defendant thinks appropriate. The Utah Constitution provides civil damages for injuries to the consortium interests of familial love, companionship, services, and society that arise in wrongful death actions. Article XVI, section 5 of the Utah Constitution provides a cause of action for wrongful death and states that "the amount recoverable shall not be subject to any statutory limitation...." Several Utah cases hold that injury inflicted on family relationships is a recoverable damage item in a wrongful death case under this provision. In *Evans v. Oregon Short Line Railroad*, 37 Utah 431, 108 P. 638 (1910), an action for the wrongful death of a spouse, this Court defined the consortium-type damages that are recoverable in such an action:

> Whatever is allowed by the jury must therefore be by way of pecuniary recompense for the loss sustained by the wife and minor children, and must be strictly limited (1) to what the evidence shows the deceased contributed, and thus would probably have continued to contribute to them in money or other means by way of support and as an accumulation to his estate; and (2) to the money value of the injury suffered by the wife and minor children by reason of the loss of the advice, comfort, and society which they enjoyed prior to the death of the deceased and which would have been continued for their benefit.

37 Utah at 440, 108 P. at 641. In *Jones v. Carvell*, 641 P.2d 105 (Utah 1982), we explained further the nature of the losses recoverable in wrongful death actions by family members:

> It is the loss of society, love, companionship, protection and affection which usually constitute the heart of the [wrongful death] action. Stated somewhat differently, this Court has stated that recovery may be had for "the loss of affection, counsel and advice, the loss of

---

comments in this footnote, he continues to refer to the "three-judge lead opinion" in *Hackford*. Although Justice Howe stated that he "agree[s] with much of [Justice Zimmerman's] opinion ...," he did not indicate which parts he agreed with. *See* 740 P.2d at 1287 (Howe, J., concurring in the result). Beyond that, *Nelson* could hardly have been more clear in articulating the relationship-based rationale for alienation of affections as opposed to being chattal-based.

**3.** Justice Durham wrote:

The cause of action for loss of consortium is a separate and distinct action that belongs to the nonphysically injured spouse.... Although the action is nominally derivative in the limited sense that it arose out of or was occasioned by an injury to the spouse, an action for loss of consortium is in fact an action for direct injury to the plaintiff spouse who no longer has the marital benefits of society, comfort, and protection. *See, e.g., Hitaffer, supra* note 2, at 816 ("Marriage gives each [spouse] the same rights.... Each is entitled to the comfort, companionship, and affection of the other.... Any interference with these rights, whether of the husband or of the wife, is a violation, not only of natural right, but also of a legal right arising out of the marriage relation."). 740 P.2d at 1290–91 (Durham, J., dissenting).

deceased's care and solicitude for the welfare of his or her family and the loss of the comfort and pleasure the family of deceased would have received ..." *In re Behm's Estate,* 117 Utah 151, 159, 213 P.2d 657, 661, 40 A.L.R.2d 490, 496 (1950).

641 P.2d at 108 (citations omitted).

Neither defendant nor the dissenters in this case and in the companion case of *Sharp v. Roskelley,* 818 P.2d 4 (Utah 1991), contend that the Married Woman's Act can be construed to abolish the tort of alienation of affections. Furthermore, if *stare decisis* were given controlling application in this case, as it was in *Hackford,* the tort of alienation of affections would have to be sustained, since that tort has long been recognized as a valid cause of action in Utah. *Nelson v. Jacobsen,* 669 P.2d 1207 (Utah 1983); *Sadleir v. Knapton,* 5 Utah 2d 26, 296 P.2d 278 (1956); *Wilson v. Oldroyd,* 1 Utah 2d 362, 267 P.2d 759 (1954); *Buckley v. Francis,* 78 Utah 606, 6 P.2d 188 (1931).

The argument that the tort of alienation of affections is an historical anomaly is incorrect. Certainly, many of the common-law concepts concerning the nature of the marriage relationship and the jural rights of spouses with respect to each other and to family property are no longer accepted by any court. Few today would challenge the proposition that a sound marriage relationship is intrinsically deserving of protection from outside assaults made by those who use improper means to interfere with it. The obsolete procedural and property theories that once attended the tort, and are relied on by the dissenters as reasons for abolishing the tort, have long been abandoned; if applied today, they would be unconstitutional.

The argument for abolition of the tort of alienation of affections has been predicated largely on allegations of abuse of the tort by collusion of spouses against third persons for purposes of blackmail and the assertion that abuses are so prevalent that the tort should be abolished. Several legislatures did abolish the tort in the 1920s and 1930s on the ground that it had been abused, but public attitudes that created such a potential for abuse have changed considerably since then. Victorian attitudes toward sex in that era were widespread, making sex a taboo subject in public discourse. Even a whispered allegation of sexual misconduct could create a public scandal that could utterly ruin a person. In those circumstances, a threat of charging another with sexual misconduct, whether real or fabricated, was indeed a basis for blackmail. Even then, what abuse did occur, occurred more often in connection with the torts of breach of promise to marry and enticement than with the tort of alienation of affections. Certainly, there is no empirical evidence of abuse in this state, as far as we are aware.[4] To a large extent, the basis for abuse has diminished as the Victorian attitudes toward sex have diminished and yielded to a much more frank and open attitude, as is evident from sexually explicit material regularly published in magazines, newspapers, television, movies, and books.

Furthermore, the tort of alienation of affections protects the marriage relationship from a variety of assaults by third persons, whether extramarital sexual affairs are involved or not. Sexual misconduct is only one means of destroying spousal affections.[5] The gist of the tort is the protection of the love, society, companionship, and comfort that form the foundation of a marriage and give rise to the unique bonding that occurs in a successful marriage.[6] *See* W. Keeton, *Prosser and Keeton on The Law of Torts* § 124, at 918 (5th

---

4. In *Buckley v. Francis,* 78 Utah 606, 6 P.2d 188 (1931), the plaintiff in effect sought to suborn the testimony of his ex-spouse to testify favorably for him and against the defendant. That single episode proves nothing with respect to any general abuse of the tort of alienation of affections and could as easily have happened in connection with any cause of action.

5. We are well aware that a number of factors in modern society have severely undermined many marital relationships and that a high percentage of children are born out of wedlock. None of that, however, argues for not protecting successful marriages.

6. *See* note 1 *supra.*

ed. 1984); *Jones v. Carvell*, 641 P.2d 105 (Utah 1982). *Cf. Evans v. Oregon Short Line R.R.*, 37 Utah 431, 108 P. 638 (1910). A fact that is often ignored in arguments favoring abolition of the tort is that the tort lies for all improper intrusions or assaults on the marriage relationship, whether or not they are associated with extramarital sex. Thus, in-laws, clerics, and others whose malicious interventions have destroyed marital bonds have been held liable for alienation of affections, even in the complete absence of any sexual aspect to the alienation. W. Keeton, *Prosser and Keeton on The Law of Torts* § 124, at 919 (5th ed. 1984). The scope of the tort was noted by the Iowa Supreme Court in *Bearbower v. Merry*, 266 N.W.2d 128 (Iowa 1978). It observed that of forty-one alienation of affections cases decided by that court throughout its history, twenty-two were prosecuted against immediate family members of a spouse and did not involve extramarital sexual relationships. The argument that the tort is unduly subject to the abuse of blackmail and collusion simply has no merit whatsoever in such cases.

A recent case of wrongful interference with marital bonds that had nothing to do with extramarital affairs is *O'Neil v. Schuckardt*, 112 Idaho 472, 733 P.2d 693 (1986). There, the Idaho Supreme Court held third parties liable for alienating a wife's affections by using a combination of severe psychological and religious pressures aimed directly at the marriage. The case was tried on an alienation of affections theory, and a verdict was returned for the husband. The Idaho Supreme Court, without much explanation, held that the tort of alienation of affections should be abolished, yet sustained the judgment for the plaintiff on an invasion of privacy theory.[7] Although *O'Neil* is cited by authorities as one of three cases which have abolished the tort of alienation of affections, the fact is that the Idaho court sustained an action for the invasion and destruction of a marriage relationship, whatever the name appended to the tort.[8]

Defendant also asserts that the tort should be abandoned because only a handful of states continue to recognize a cause of action for alienation of affections. Factually, that is incorrect. Approximately half the states have abolished the action for alienation of affections by legislative action, and if *O'Neil v. Schuckardt* is counted, three states have abolished all or part of the tort by judicial decision. *See O'Neil v. Schuckardt*, 112 Idaho 472, 733 P.2d 693 (1986); *Fundermann v. Mickelson*, 304 N.W.2d 790 (Iowa 1981); *Wyman v. Wallace*, 94 Wash.2d 99, 615 P.2d 452 (1980). As noted, Idaho apparently retains part of the tort under the name of invasion of privacy.

Much more significant is the fact that the American Law Institute retains the tort in the Restatement (Second) of Torts § 683 (1977). That section provides:

One who purposely alienates one spouse's affections from the other spouse is subject to liability for the harm thus caused to any of the other spouse's legally protected marital interests.

Dean Prosser also agreed that the tort should be retained: "[Statutes which abolish alienation of affections] reverse abruptly the entire tendency of the law to give increased protection to family interests and the sanctity of the home, and undoubtedly they deny relief in many cases of serious and genuine wrong." W. Prosser, *Handbook of The Law of Torts* § 124, at 887–88 (4th ed. 1971). Although that statement does not occur in the fifth edition, it is no less true today, in our view.[9] Certainly,

7. The court did not address the difficult issues concerning freedom of religion.

8. The court did not state whether a suit for invasion of privacy would lie if the gist of the particular action were based on sexual misconduct.

9. We agree with 1 F. Harper & F. James, *The Law of Torts* § 8.8, at 629 (1956):

Undoubtedly the actions in question have been subjected to abuses. What is doubtful, however, is the wisdom of meeting such abuses by complete abolition of all remedies. Moreover, it is by no means certain that all four actions [i.e., alienation of affections, seduction, criminal conversation, and breach of promise to marry] should be lumped together for identical treatment. It would appear that

the impetus for abolition that occurred in the 1920s and 1930s seems to have lost most of its force today.[10]

Concededly, difficult jurisprudential problems exist with respect to the tort of alienation of affections, but they are not wholly unique to that tort. One such problem is the absence of an objective basis for determining the proper amount of damages for the emotional nonobjective aspects of consortium. However, that difficulty also exists with other torts and is not a valid reason for refusing to extend judicial protection to the marital bond. In *Jones v. Carvell*, 641 P.2d 105 (Utah 1982), we addressed a similar issue in a slightly different context and held that when an intangible injury is inflicted, the defendant should stand the risk of the indefinite standards for an award of damages rather than depriving the injured party of a remedy. In *Jones*, we stated:

> Concededly, such losses are difficult to quantify and impossible to fit into a mathematical formula which translates them in any precise fashion into monetary values. But the alternatives raise an even more serious problem. To say that the law recognizes no loss for intangible injuries resulting from a wrongful death is repugnant to basic human values and flouts basic principles of justice. On the other hand, the law does not permit unfettered discretion in awarding damages. Experience demonstrates that juries and judges are able to translate the loss of a child's life into monetary values in a manner which has been generally accepted as reasonable and has avoided grossly disparate damage awards. To be sure, the making of such judgments is not easy and requires great understanding of those human values which can make interpersonal relationships so precious. Yet, the process, difficult as it is, must be tempered and confined so as to strike a just balance.

641 P.2d at 108. The same principle applies here. *See also Nelson v. Jacobsen,* 669 P.2d 1207 (Utah 1983).

Another difficulty with the tort of alienation of affections is identifying the existence and the strength of the various causative factors that weaken or destroy the bonds that are essential to the consortium interests protected by the law. Certainly extramarital relationships can and do destroy the bonds of mutual trust upon which a sound marriage is founded; but marriages also fail simply because of personal inadequacies of one or both of the spouses. A meretricious relationship may be only incidental to more primary causes, or it may itself be a primary cause, creating a sense of betrayal and unhappiness that leads to divorce or a loss of affection. When the causes of marital discord arise primarily from the personalities or inadequacies of the spouses, and not from the actions of a third person, the tort ought not to lie. When a third person is at fault for the breakdown of a marriage, the law ought to provide a remedy.

The difficulty lies in trying to determine when the conduct of a third party is the primary or controlling cause and when it is incidental. *Nelson* held that the conduct of the third party had to be the controlling cause of the weakening or destruction of the marriage. The Court stated:

---

the action for breach of contract to marry is more readily perverted to improper use than the action for alienation of affections. Usually the evidence in the latter type of suit is more objective and convincing and jury verdicts more reliable. It may well be that limitation on damages and certain procedural reforms would have met the problem more satisfactorily than complete abolition. Particularly in the case of alienation, grievous wrongs are suffered and some of life's most important interests ruthlessly invaded. To abolish all remedy in such cases is certainly subject to serious question.

10. Defendant's argument that the Legislature's adoption of irreconcilable differences as a ground for divorce militates against continued recognition of the tort is without merit. The Legislature has simply recognized that when a marriage breaks down because the characters or personalities of the parties make a marriage impossible, they should be allowed to dissolve the marriage. That, however, has nothing to do with the propriety of making actionable the conduct of a third person who undermines a marriage.

First, the requirement that the defendant's acts must have constituted the "controlling cause" of the alienation of affections means that the causal effect of the defendant's conduct must have outweighed the combined effect of all other causes, including the conduct of the plaintiff spouse and the alienated spouse. For this purpose, a defendant is properly chargeable with the effect of mere acquiescence in the overtures of the alienated spouse where the defendant knows or has reason to know that such acquiescence will damage the marital relationship.

669 P.2d at 1219.

The author of the instant opinion filed a concurring and dissenting opinion in *Nelson*, stating that "it is not often that full responsibility for the breakdown of a marriage can be attributed with any great degree of assurance to one or the other of the parties, let alone solely to the conduct of a third person." 669 P.2d at 1222 (Stewart, J., concurring and dissenting). In an effort to provide a more workable guideline for determining whether a marriage breaks down primarily because of difficulties between the spouses based on their own personal characteristics or whether it breaks down primarily because of the acts of a third person, this author's opinion proposed a further limitation:

> There are those in special positions of power, status, or authority who may illicitly use sex to satisfy their own passions or for otherwise improper ends. There are any number of such relationships, i.e., professors and students; physicians and patients; psychiatrists, psychoanalysts, or psychologists and clients; and employers and employees. Those who use positions of power or authority for the purpose of obtaining sexual favors and produce an alienation of affections between the one in an inferior position and his or her spouse, abuse and overreach any legitimate power they may have. In such cases, the consequence may be not only the breakup of one or perhaps two marriages, but also unforeseeable consequences in the future lives of the children from such marriages.

669 P.2d at 1222 (Stewart, J., concurring and dissenting).

■ We do not now, however, make the existence of such a relationship a necessary element in the proof of causation. We view the enumerated relationships, and others in which one may improperly use power, status, or authority to obtain improper and illicit sexual favors, as examples of what can be evidence of causation. When such relationships exist and are improperly exploited, the causation issue may be more easily resolved. It is, however, possible that the "subordinate" party may also use the relationship for his or her own ends. Certainly, the mere existence of such a relationship does not suffice by itself to establish causation in an action for alienation of affections, but it may be probative of the causation element if the "superior" party abuses the relationship for illicit sexual purposes. In any event, we make clear that the tort will lie, even if no such power, status, or authority relationship exists.

■ Whether or not there is such a relationship, we hold that a plaintiff must prove by clear and convincing evidence that it was the conduct of defendant that constituted a controlling cause of the injury to a spouse's consortium interests and that his or her conduct was not just incidental to other causative factors that destroyed or damaged the marriage or conjugal relationship.

The allegations in the complaint state that defendant's acts were the controlling cause of the breakup of the marriage. Plaintiff also alleges the existence of a special relationship and the abuse of it. On the allegations of the complaint, plaintiff has alleged a valid cause of action.

## II. THE TORT OF CRIMINAL CONVERSATION

■ Defendant also asserts that this Court should abolish the tort of criminal conversation because the tort is even more subject to abuse than the tort of alienation of affections. The tort of criminal conversation was not at issue in *Nelson v. Jacobsen*, 669 P.2d 1207 (Utah 1983). Because

the primary rationale for the tort of criminal conversation is not the protection of the marital relationship as such, but the right to exclusive sexual intercourse with a spouse, *Hackford* has no bearing on the issue we now address. The argument that this tort should be abolished is addressed, therefore, by this Court for the first time in recent years in this case and the companion case of *Sharp v. Roskelley*, 818 P.2d 4 (Utah 1991).

The tort of criminal conversation came into existence primarily because of the great importance that feudal society placed on insuring that the right of inheritance to property, title, and office descended to legitimate children only. Conflicting claims to titles, property, and estates could lead to discord and even violence. The law afforded a remedy designed to prevent illegitimate children by allowing a husband to sue another man who had intercourse with his wife. Stone, *The Family, Sex and Marriage* 316 (abridged ed. 1979). *See also Nelson v. Jacobsen*, 669 P.2d 1207, 1222 (Utah 1983) (Durham, J., dissenting).

In 1857, the tort of criminal conversation was abolished in England by the Matrimonial Causes Act. In *Cahoon v. Pelton*, 9 Utah 2d 224, 342 P.2d 94 (1959), this Court addressed for the first time the question of whether the tort of criminal conversation should be recognized in this state. The Court rejected the common-law theory that adultery was actionable as a trespass on a man's wife. Instead, the Court held that adultery, or the tort of criminal conversation, was actionable because of "the exclusive right of either spouse to intercourse with the other." 9 Utah 2d at 231, 342 P.2d at 98. The Court stated that a "person who violates this right, though with the consent or even enticement of the guilty spouse, is liable in damages to the innocent spouse. It is similar in some respects to the right against alienation of affections but is stronger in that it requires the com-

mission of adultery in violation of the criminal law." 9 Utah 2d at 231, 342 P.2d at 98–99.

 Whatever the underlying rationale, damages, including punitive damages, may be awarded against one who engages in an extramarital affair with the spouse of another, even if there has been a complete and irreparable loss of affection and companionship between the marriage partners before the affair, and even if the husband and wife are only awaiting the entry of a final divorce decree. 1 F. Harper & F. James, *The Law of Torts* § 8.3, at 612 (1956). In truth, the tort is essentially a tort of strict liability. The tort is not designed to indemnify the aggrieved spouse for any loss to the marriage relationship. Indeed, a damage award may well be a complete windfall to the plaintiff. Moreover, there are no defenses, even if the offending spouse was the aggressor and wholly responsible for enticing the defendant into the act. A damage award in such circumstances may simply be a reward for greed and vindictiveness, which could destroy whatever possibility there might be of restoring the marital relationship.

Furthermore, the tort may impose large punitive damages on one of two parties to a mutual act, even though the one held liable under the law was not the aggressor and was less culpable. Whether the offending spouse is the initiator, or intercourse occurs because of the mutual desire of both parties, or the offending spouse is wholly passive, the offending spouse always acts consensually.[11] Thus, despite the inevitable contributing fault of the offending spouse, the tort imposes total liability for the act of two people on only one of them.[12]

Because it is both unfair and bad policy to allow a non-offending spouse who has not been damaged to recover damages for the adultery of the other spouse and a third person when that act does not affect the marital interest, the tort serves no useful

11. Although the tort may lie for a rape, the typical case occurs with the consent of the offending spouse. Obviously, if consent is not given by a spouse, the act is rape, and that spouse has an action for a battery.

12. The same is true, of course, with respect to the tort of alienation of affections, but with respect to that tort, there is a strong and vital interest to be protected.

purpose. It may even be counterproductive if it is used for vindictive purposes by a spouse whose marriage has failed for reasons attributable to the fault of that spouse. Because the law provides an adequate remedy when the marital bonds and relational interests are damaged by illicit sexual intercourse, we hold that the tort of criminal conversation is unnecessary and should be abolished as a tort separate and apart from the overlapping tort of alienation of affections.[13]

The only reason both torts have continued to exist in modern times is simply historical. To the extent that the tort of criminal conversation provides a cause of action for adultery when the marriage commitment is dead, it serves no useful purpose in awarding damages. If the marriage commitment of the spouses is not dead, the tort of alienation of affections provides an adequate legal remedy.

In abolishing criminal conversation, we join a number of other courts that have done the same. *Bearbower v. Merry*, 266 N.W.2d 128 (Iowa 1978); *Kline v. Ansell*, 287 Md. 585, 414 A.2d 929 (1980); *Feldman v. Feldman*, 125 N.H. 102, 480 A.2d 34 (1984); *Lynn v. Shaw*, 620 P.2d 899 (Okla. 1980); *Fadgen v. Lenkner*, 469 Pa. 272, 365 A.2d 147 (1976); *Hunt v. Hunt*, 309 N.W.2d 818 (S.D.1981); *Irwin v. Coluccio*, 32 Wash.App. 510, 648 P.2d 458 (1982). The state of Louisiana, a civil law state, refused to recognize the tort several decades ago. *Moulin v. Monteleone*, 165 La. 169, 115 So. 447, 448–49 (1927). *See also* Note, *The Case for Retention of Causes of Action for Intentional Interference with the Marital Relationship*, 48 Notre Dame Lawyer 426, 433 (1972) ("To allow recovery on the basis of the sexual conduct alone without proof of a resulting diminution of affections or similar loss would leave the door open to flagrant injustices.").

■ We note in passing that abolition of the tort of criminal conversation by this Court does not violate Article I, section 11 of the Utah Constitution, the open courts provision. That provision insures a legal remedy for injury to person, property, or reputation. The purpose of the tort of criminal conversation is to protect the right of marital exclusivity in sexual intercourse with one's spouse. Adultery may constitute an injury to one's marital relationship but not to one's own person. However, even if it could be so construed, abolition of criminal conversation does not violate the open courts provision. *Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 680 (Utah 1985), made clear that Article I, section 11 does not prevent the abolition of obsolete causes of action. Certainly, alienation of affections provides an effective and reasonable alternative remedy, in any event.

■ The argument that this Court should leave the issue of abolishing the tort of criminal conversation to the Legislature is an argument for abdication of judicial responsibility, which we reject. The tort of criminal conversation was created by the courts through the evolutionary processes of the common law. It is the responsibility of the judiciary to examine those causes of action which it has created, to alter them when appropriate, and to abolish them when necessary. The basic evolutionary provisions of the common law have not been repealed. Judicial power to alter, abolish, and create causes of action does not, of course, restrict the right of the Legislature to have the last word with respect to tort law, at least insofar as the Legislature does not transgress constitutional limitations on its powers. *See* Utah Const. art. I, § 11. The New Hampshire Supreme Court, confronted with this same argument, aptly observed:

As a common-law tort, the action for criminal conversation is a creation of the judiciary. Consequently, "it is the duty of the judiciary to examine it and make

---

**13.** It should be noted that the tort of alienation of affections will lie whether or not the marriage is terminated as a result of the defendant's conduct. *See Orr v. Sasseman*, 239 F.2d 182, 186 (5th Cir.1956). *See also Parker v. Gordon*, 178 F.2d 888 (1st Cir.1949); Restatement (Sec-ond) of Torts § 683 (1977); W. Keeton, *Prosser and Keeton on The Law of Torts* § 124, at 918 (5th ed. 1984). All that is necessary is that there be injury to consortium interests or a diminution of affections.

such changes as justice requires when the legislature has chosen not to act." *Briere v. Briere*, 107 N.H. 432, 434, 224 A.2d 588, 590 (1966). The legislature expressed its will by enacting laws, not by failing to do so. Furthermore, its inaction could be motivated by its assumption that if a judicially developed rule is unjust the courts will overrule it." *Merrill v. Manchester*, 114 N.H. 722, 728, 332 A.2d 378, 382 (1974). It follows that the general rule of deference to the legislative intent has no application here, where the legislature has expressed no intent that the cause of action be retained.

*Feldman v. Feldman*, 125 N.H. 102, 104–105, 480 A.2d 34, 35 (1984).

The order of the trial court sustaining the tort of alienation of affections is affirmed. The order denying the motion to dismiss with respect to the tort of criminal conversation is reversed.

Remanded for further proceedings.

HOWE, Associate Chief Justice (concurring and dissenting):

I concur in part I retaining the tort of alienation of affections for the reasons expressed in the majority opinion and for the reasons discussed in *Sharp v. Roskelley*, 818 P.2d 4 (Utah 1991), but I dissent from part II, which abolishes the tort of criminal conversation.

The defendants here and in *Sharp v. Roskelley* contend that the tort of criminal conversation should no longer be recognized in this state and urges us to judicially abolish it. In the last criminal conversation case before this court, *Cahoon v. Pelton*, 9 Utah 2d 224, 342 P.2d 94 (1959), we stated that the tort is based upon the exclusive right of each spouse to intercourse with the other and that a cause of action would lie with either the husband or the wife against anyone who violated that right. We explained:

"A fundamental right which flows from the relation of marriage, and one which the well being of society requires should be maintained inviolate, is that of one spouse to have exclusive marital intercourse with the other, and whenever a third person commits adultery with either spouse, he or she commits a tortious invasion of the rights of the other spouse, from which a cause of action for criminal conversation arises."

9 Utah 2d at 232, 342 P.2d at 99 (quoting 27 Am.Jur. *Husband and Wife* § 535). We concluded in *Cahoon* that the policy expressed in the above-quoted material was in accord with our statutes emancipating married women, Utah Code Ann. §§ 30–2–1 to –19 (1953), and the decisions of this court on the rights of married persons as between them and other persons who come between spouses. 9 Utah 2d at 232, 342 P.2d at 99.

Other courts and authorities have similarly stated that the basis of the cause of action for criminal conversation is the invasion of the marital relationship. *Fennell v. Littlejohn*, 240 S.C. 189, 125 S.E.2d 408 (1962). In that case, the court emphasized the interest of the state in protecting marriage contracts. Said the court:

While marriage is in one sense a private contract between the parties, it is also a relationship in which the state is vitally interested and, because of such interest, the law attaches thereto certain rights and duties, irrespective of the wishes of the parties. Marriage is in its nature a permanent status and has been properly referred to as the most important of all civil relations. The relationship, once entered into, cannot be dissolved by consent of the parties. It continues until death or dissolution by proper judicial decree.

240 S.C. at 196, 125 S.E.2d at 412.

The court recognized a public policy to foster and protect marriage, to make it a permanent and public institution, to encourage parties to live together, and to prevent separation. The court referred to marriage as an institution in the maintenance of which the public is deeply interested, "for it is the foundation of the family and society, without which there would be neither civilization nor progress." 240 S.C. at 197, 125 S.E.2d at 412–13.

Similarly, in a dissenting opinion in *Fadgen v. Lenkner*, 469 Pa. 272, 365 A.2d 147 (1976), Justice Roberts observed, as we did in *Cahoon*, that while the cause of action originally was to protect the property right of the husband in his wife, the action is now equally available to husband or wife, and the basis of the action today is not the protection of property rights but the protection of conjugal rights. 469 Pa. at 285, 365 A.2d at 153. He pointed out that respected authorities on the law of torts have noted that the interests involved in the familial relationship are among the most delicate and important in our society. Quoting from W. Prosser, *Handbook of the Law of Torts* § 1, at 6 (4th ed. 1971), that tort liability must be predicated upon conduct which is "socially unreasonable," he observed that our society still considers it socially unreasonable for one person to have sexual relations with the spouse of another. 469 Pa. at 285, 365 A.2d at 154. He concluded that an action for criminal conversation is legitimate for the invasion of this marital interest.

The American Law Institute in its Restatement (Second) of Torts, § 685 (1977), likewise recognizes the exclusive right of married persons to sexual intercourse with each other:

> One who has sexual intercourse with one spouse is subject to liability to the other spouse for the harm thus caused to any of the other spouse's legally protected marital interests.

In accordance with case law, the Restatement in comment d states that the aggrieved spouse is entitled to recover damages even though he or she sustains no further loss, but if there has been additionally an alienation of affections, the aggrieved spouse may also recover damages for that alienation.

Some states have abolished the tort of criminal conversation by legislative enactment. However, only seven states have judicially abolished the tort. *Bearbower v. Merry*, 266 N.W.2d 128 (Iowa 1978); *Kline v. Ansell*, 287 Md. 585, 414 A.2d 929 (1980); *Feldman v. Feldman*, 125 N.H. 102, 480 A.2d 34 (1984); *Lynn v. Shaw*, 620 P.2d 899 (Okla.1980); *Fadgen v. Lenkner*, 469 Pa. 272, 365 A.2d 147 (1976); *Hunt v. Hunt*, 309 N.W.2d 818 (S.D.1981); *Irwin v. Coluccio*, 32 Wash.App. 510, 648 P.2d 458 (1982). In each of those cases, the court relied in whole or in part on conditions in that state which are not present in Utah. In the Iowa, Pennsylvania, and South Dakota cases, the courts reasoned that because adultery had been decriminalized in those states, a civil remedy should no longer be accorded. The basis of the decision in the Maryland case was that Maryland had never recognized the right of a wife to sue for criminal conversation and thus the cause of action violated the equal rights amendment to its state constitution. In the Oklahoma case, the basis of the decision was that the legislature had abolished causes of action for seduction and thereby impliedly abolished the tort of criminal conversation. In the Washington case, the court of appeals abolished the cause of action for criminal conversation because the supreme court of that state had earlier abolished the cause of action for alienation of affections. The court of appeals opined that the supreme court's reasoning for doing so was equally applicable to abolishment of criminal conversation. The New Hampshire court relied on the facts that actions for alienation of affections had been abolished in that state and that the defendant honestly believed that the offending spouse was not married (see *infra* where I advocate that such a belief should be a valid defense).

It is clear that none of the reasons relied upon by the seven courts which have abolished actions for criminal conversation are relevant to our determination here: Adultery has not been decriminalized in Utah; the action for criminal conversation is equally available to both husband and wife; and neither the legislature nor this court has abolished actions for alienation of affections or seduction. It is interesting to note that in several states where actions for alienation of affections or criminal conversation or both have been legislatively or judicially abolished, courts have given judicial approval to actions bearing different names but protecting the same familial in-

terests. See *O'Neil v. Schuckardt*, 112 Idaho 472, 733 P.2d 693 (1986), where the court abolished causes of action for alienation of affections but gave judicial sanction to a cause of action for invasion of privacy, and *Raftery v. Scott*, 756 F.2d 335 (4th Cir.1985), holding that although Virginia by statute had abolished actions for alienation of affections, this did not preclude a father's action against the mother for infliction of emotional distress incurred by the mother's efforts to turn the child against the father, even though the substituted cause of action had some overtones of alienation of affections but stating that it was a separate and distinct tort. *See generally* W. Keeton, *Prosser & Keeton on the Law of Torts* § 124 (5th ed. 1984).

The reasons given by this court in *Cahoon v. Pelton* for the continued recognition of criminal conversation are still persuasive today, and I eschew the invitation of defendant to now judicially abolish it. In my research, I have found no authority discounting the value or importance of familial interests. Whether there are better means of protecting those interests than the action for criminal conversation is a matter which is better left to the legislature to decide. In that forum, the pros and cons can be debated and the elected representatives of the people can determine whether this cause of action has outlived its usefulness or whether it is effective in protecting what everyone concedes to be a worthwhile interest. The legislative route has been taken in the overwhelming majority of states where actions for criminal conversation and alienation of affections have been abolished. As earlier pointed out, only seven states have judicially abolished actions for criminal conversation. Only three states have judicially abolished actions for alienation of affections. *O'Neil v. Schuckardt*, 112 Idaho 472, 733 P.2d 693 (1986); *Fundermann v. Mickelson*, 304 N.W.2d 790 (Iowa 1981); *Wyman v. Wallace*, 94 Wash.2d 99, 615 P.2d 452 (1980). The Supreme Court of Minnesota in *Gorder v. Sims*, 306 Minn. 275, 237 N.W.2d 67 (1975), spurned the urging of the appellant to abolish actions for alienation of affec-

tions and deferred to legislative action. Said the court:

> So far as any institution can, [the legislature] represents the attitude of the public in matters of this kind. Until the legislature declares that individuals are free to intrude themselves upon the special relationship which exists between a husband and wife, we feel no compelling sense of urgency to do so. It may be true that rules relating to the behavior of married persons have become relaxed in current times, but, whatever the extent of that relaxation, the jury (presumably representative of community mores in Hennepin County), having been fully instructed by the trial court as to the essential elements of the cause of action, concluded that permissiveness had been abused in this case by defendant, to plaintiff's damage.

306 Minn. at 282–83, 237 N.W.2d at 71–72.

Much of the criticism which has been leveled at the tort of criminal conversation has been directed toward its lack of defenses. That objection can be largely overcome by recognizing valid defenses on a case-to-case basis. For example, it is not a defense at common law that a defendant did not know or have reason to believe that his or her sexual partner was married. *See* Restatement (Second) of Torts, § 685 comment f (1981). If this lack of defense is perceived to be unjust, we can create such a defense when the proper case arises. (No such claim is made in the instant case.) In addition, there are several factors which may be properly introduced into evidence to minimize damages. In the determination of the amount recoverable for emotional distress, the plaintiff's neglect or indifference toward the other spouse is a factor to be considered, or if the other spouse has previously had sexual relations with other persons, the damages will be reduced. *Id.* at comment g. With the creation of proper defenses on a case-to-case basis and the introduction into evidence of minimizing factors, the judge or jury can, in its award of damages, insure that a defendant's liability corresponds to the degree of his or her culpability.

Justice Stewart, writing for a majority, maintains that a defendant may be held liable even though the marital interests of the non-offending spouse are not damaged because the marriage is already strained. I cannot subscribe to that justification. The policy of the law is to keep married couples together. Even if a marriage is in trouble, reconciliation is always possible and many times very probable. To allow a third person to interfere with a troubled marriage by having sexual intercourse with one of the spouses only exacerbates the situation. Nothing will more quickly destroy all chances for reconciliation than adultery by one or both parties.

Many of the arguments which Justice Stewart advances for keeping the cause of action for alienation of affections also auger in favor of keeping the cause of action for criminal conversation. Stare decisis, as well as approval in section 685 of the Restatement (Second) of Torts, supports its retention. Consequently, I would leave it to the state's policy maker, the legislature, to abolish criminal conversation rather than to this divided court.

HALL, C.J., concurs in the concurring and dissenting opinion of HOWE, Associate C.J.

DURHAM, Justice (concurring and dissenting):

In my dissent in *Hackford v. Utah Power & Light Co.*, 740 P.2d 1281 (Utah 1987), I said that there was "no logical reason to permit an action for loss of consortium for an intentional tort [namely, alienation of affections], yet prohibit the action for a negligent tort." *Id.* at 1293. In this case, I go further and assert that, having declined to recognize a common law cause of action for loss of consortium in *Hackford*, this court has rejected the historical common law foundation for the torts of alienation of affections and criminal conversation. "*While agreeing that the action [for*

*alienation of affections] was based primarily on loss of consortium*, courts have defined the consequences variously as an injury to property, to the person, to personal rights, or to feelings." Feinsinger, *Legislative Attack on "Heart Balm,"* 33 Mich. L.Rev. 979, 993 (1935) (emphasis added). Likewise, the tort of criminal conversation has its roots in common law rights to the body and services of a spouse (historically, the wife):

> The focus of the tort of criminal conversation lies in the husband's proprietary interest in the body and services of his wife, whose status at common law was that of the husband's chattel and servant.... The courts expanded the concept of trespass and established the tort of criminal conversation to protect the husband's right of exclusive marital intercourse.

Note, 15 Duq.L.Rev. 709, 711 (1977) (citations omitted). "Damages recoverable in a criminal conversation action are essentially the same as those for alienation of affections. This is as it should be, since both actions provide a remedy for the interference with consortium." Comment, *Stealing Love in Tennessee: The Thief Goes Free*, 56 Tenn.L.Rev. 629, 653 (1989) (citations omitted).

It strikes me as a peculiar irony that this court is willing to uphold a common law cause of action for alienation of affections, a tort which "diminishes human dignity"[1] but is unwilling to recognize equivalent or even more devastating losses to innocent spouses through loss of consortium resulting from a third party's negligent conduct. I suggest that the concern of the majority opinion in this case for the sanctity of the marital relationship and all it implies rings hollow in the context of this court's failure to permit recovery for damages done to that relationship through negligence.

---

1. The Washington Court of Appeals in *Wyman v. Wallace*, 15 Wash.App. 395, 549 P.2d 71 (1976), *aff'd*, 94 Wash.2d 99, 615 P.2d 452 (1980), said: "To us the action diminishes human dignity. It inflicts pain and humiliation upon the innocent, monetary damages are ei-

ther inadequate or punitive, and the action does not prevent human misconduct itself." *Id.* 549 P.2d at 74. The court also observed, "The action brings out in the plaintiff spouse deceit, jealousy and greed." *Id.* at 73.

Moreover, other legitimate alternatives to an alienation of affections cause of action exist to protect the interests in question. Breach of fiduciary duty, intentional infliction of emotional distress, sexual harassment, professional malpractice, and invasion of personal or familial privacy are a few examples. *See, e.g., O'Neil v. Schuckardt*, 733 P.2d 693 (Idaho 1986) (abolishing the tort of alienation of affections, but upholding a cause of action for invasion of domestic privacy by "cult" religious leaders); Coleman, *Sex in Power Dependency Relationships: Taking Advantage of the "Fair" Sex*, 53 Alb.L.Rev. 95 (1988); *Destefano v. Grabrian*, 763 P.2d 275 (Colo.1988) ("heart balm" statute did not prevent couple's claim of outrageous conduct/breach of fiduciary duty against clergyman who had sexual relations with wife while counseling for marital problems); Note, *Loss of Consortium and Intentional Infliction of Emotional Distress: Alternative Theories to Alienation of Affections*, 67 Iowa L.Rev. 859 (1982); Note, *Sexual Molestation Within America's Parishes and Congregations; Should the Church be "Thy Priest's Keeper"?*, 91 W.Va.L.Rev. 1097 (1989); Clark, *Marital Privacy: New Remedies for Old Wrongs*, 16 Cumb.L.Rev. 229 (1986); Note, *Sexual Exploitation and Psychotherapy*, 11 Women's Rights L.Rep. 121 (Summer 1989).

In conclusion, I agree with the comment of the Idaho Supreme Court, which recently abolished the cause of action for alienation of affections because "the many ill effects of the suit ... outweigh any benefit it may have," *O'Neil v. Schuckardt*, 733 P.2d at 698, and extend the sentiment to the tort of criminal conversation. Furthermore, in Utah, where the loss of consortium is not protected against negligent damage, I submit that there can be no legitimate recovery for consortium damages resulting from intentional acts. The interest in the marital relationship should exist for all purposes or for none. Therefore, I concur in the abolition of the tort of criminal conversation and dissent from the retention of the tort of alienation of affections.

ZIMMERMAN, Justice (concurring and dissenting):

I concur with Justices Stewart and Durham in abolishing the tort of the criminal conversation. However, the basis for my reaching this result leads me to dissent from Justice Stewart's, the Chief Justice's, and Justice Howe's continued recognition of the tort of alienation of affections. As Justice Durham notes, the refusal of this court in *Hackford v. Utah Power & Light Co.*, 740 P.2d 1281 (Utah 1987), to recognize a cause of action for loss of consortium also dooms the torts of criminal conversation and alienation of affections, because all three torts are grounded on common legal and historical premises. As Justice Durham notes, any legitimate interests to be protected are covered by other causes of action. Therefore, I would affirm the dismissal of the entire action.

Justice Howe, writing for a majority on the issue of alienation of affections in *Sharp v. Roskelley*, and Justice Stewart, writing for the majority in this case on the same issue, rely upon *Nelson v. Jacobsen*, 669 P.2d 1207 (Utah 1983). In that case, this court affirmed Utah's recognition of a cause of action for alienation of affections. However, the *Nelson* opinion, like the opinions of Justices Howe and Stewart in *Sharp* and the instant case, conspicuously lacks any analysis of the history of the *Utah* common law basis for the cause of action, a basis that is shared by the common law actions of loss of consortium and criminal conversation. The *Nelson* court simply asserted that although the traditional basis for these causes of action—the husband's ownership of his wife's services—may be untenable today, the alienation of affections cause of action was sustainable on the ground newly fashioned elsewhere of providing protection for relational interests. On that basis, the *Nelson* court said that the cause was equally available to husbands and wives.

However, in *Hackford*, the lead opinion gave the underlying theoretical issues their first detailed analysis and found no basis for concluding that Utah had accepted the

transformation of the chattel-based causes of action into relationship-based causes of action. The court then declined to recognize a loss of consortium cause of action. It is true that Justice Howe, joined by the Chief Justice, did not join the three-judge lead opinion in *Hackford* to the extent that it impugned the foundation of *Nelson* and the alienation of affections cause of action, but Justice Howe's separate opinion in *Hackford* does not contain any alternative analysis of the theoretical foundation of a claim for loss of consortium that would distinguish it from alienation of affections. Consistent with the analysis contained in the lead opinion in *Hackford* and in the result reached there by a majority of the court, today a majority of the court announces the abolition of the anachronistic and draconian tort of criminal conversation. I would go further, following the logic of *Hackford*'s holding and the lead opinion, overrule *Nelson*, and abolish criminal conversation's close cousin, the tort of alienation of affections.[1]

In response to Justice Howe's dissent on the criminal conversation question, I note that not only legal theory, but sensible policy, fully supports our abolition of the tort of criminal conversation. As it is articulated by Justice Howe, a criminal conversation action would lie against anyone who has sexual relations with a person who is legally married until the date his or her divorce is final. It might be nice if all those legally married but separated or in the throes of a divorce would remain chaste until their divorces are final. However, in the real world, where almost half of the marriages end in divorce and many live apart for extended periods before their divorces are final, such a delicate moral sensibility cannot justify preservation of a cause of action that has no realistic poten-

tial for preserving marriages and almost limitless potential for mischief in the hands of spiteful estranged spouses. Justice Howe, joined by the Chief Justice, would have the court announce that one party to a failed marriage may use the judicial system to vindictively inflict pain on the other party for not conforming to a code of sexual conduct which the populace, on the whole, does not share. I am pleased that we have declined that suggestion.

I fear, however, that the failure of a majority of the court to follow the logic of the *Hackford* decision and also abolish the alienation of affections cause of action will permit many of the same abuses of the judicial system that would flow from the tort of criminal conversation. The modifications Justice Stewart makes in the cause of action, which continues the restrictive tinkering started by Justice Oaks in *Nelson*, only ameliorates the evils of this cause of action; it does not eliminate them.

---

**1.** Justice Stewart, in footnote 2 of his opinion, suggests that my opinion in this case mischaracterizes the lead opinion in *Hackford*. His mischaracterization of this opinion is apparently based on some notion that because I rely on the logic of the *Hackford* lead opinion, I must be claiming that a majority of the court joined in that opinion's criticism of *Nelson* and the logical basis for the tort of alienation of affections. As any careful reader of this opinion will note, I specifically acknowledge that no other member of the *Hackford* majority joined that portion of my lead opinion. I claim no more for *Hackford* than that I would follow the logic of my opinion in *Hackford*, and what Justice Durham has properly characterized as the logic of the result reached by a majority of the court in that case, to abolish the tort of alienation of affections. I add this footnote for the benefit of those who may be puzzled by Justice Stewart's footnote.